OZANNE v. ILLINOIS CENT. R. CO.

(Circuit Court, W. D. Kentucky. March 16, 1907.)

**1. CARRIERS—INJURIES TO PASSENGERS—SLEEPING CARS—EQUIPMENT.**

Plaintiff, a passenger in a sleeping car on defendant's railroad, was thrown down while in the ladies' dressing room, by the swing of the car as the train passed around a curve going at its ordinary speed. The car was constructed according to pattern uniformly used by the makers, which was considered the best, but the ladies' dressing room was not equipped with handholds affixed to the walls, nor with any seat or chair. Cars of the type in question had been operated for years with safety, and plaintiff's injury was the first of its kind that the sleeping car company had ever known. *Held*, that the failure to equip the dressing room with seats and handholds did not constitute negligence per se.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1177–1179.]

**2. SAME—CARE REQUIRED.**

While a carrier of passengers is required to use the utmost diligence and care in providing reasonably safe cars, such carrier is not an insurer of the absolute safety of its passengers, but has discharged its duty in respect to its cars and trains when it has supplied the best instrumentalities that a highly prudent person would have supplied in the same business in the then known condition of the art and business.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1085, 1168.]

**3. SAME—DRESSING ROOMS IN SLEEPING CARS.**

While a carrier as between itself and the passenger cannot transfer or shift its duty to a sleeping car company whose cars it hauls, yet the carrier's duties relate to safe transportation, and do not include the duty to provide dressing rooms for passengers.

**4. TRIAL—DIRECTION OF VERDICT—FEDERAL COURTS.**

As the scintilla of evidence rule does not apply in the federal courts, a case tried in such court should not be taken from the jury, unless when the testimony is considered most favorably to plaintiff, and when the plaintiff has also received the full benefit of every reasonable and fair inference to be drawn therefrom, the court would still feel bound to set aside a verdict returned in plaintiff's behalf.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 320, 338, 360, 379, 383.]

A. E. Willson, for plaintiff.
Trabue, Doolan & Cox, for defendant.

EVANS, District Judge. At the conclusion of all the testimony the defendant moved the court to direct a verdict in its favor. The motion was fully argued yesterday afternoon, and I have given the questions raised as full and careful consideration as the time has permitted. If the only question were whether the lady who sues was distressingly and permanently injured, an answer in the affirmative could very easily and very truthfully be made, but even though this be true, it does not follow that she is entitled to recover from the defendant. That result must depend upon other and further considerations, and involves more than the mere question of actual injury.

The evidence leaves no doubt that she purchased from defendant at Memphis, Tenn., a ticket whereby she became a passenger on its train thence to Louisville on the night of July 8, 1905; that she also

purchased a sleeping car ticket from the Pullman Company, and went aboard one of its sleeping cars which was in defendant's train; that when the train left Memphis it was about 46 minutes behind its schedule time; that the next morning about 7:20 o'clock the train was about one hour behind time and within about an hour's run from Louisville; that it was running rapidly and at about its regular speed; that at that time Mrs. Ozanne had gone into the ladies' dressing room, had almost completed her toilet, and was buttoning her dress, when the car, in turning a curve in the track, lurched or swerved; that she fell when the car did so and broke her hip, resulting in great and long-continued sufferings; that she is still unable to walk but little, and that her injury is permanent—the medical testimony being that a person of her age, namely, 66 years, is not at all likely ever to recover from such an injury. There is no dispute that the track over which the train was moving at the time was in good order and condition, nor any that the train was well managed and running at about its schedule rate of speed at the point where the injury occurred. The undisputed testimony was that the car in which she was riding was a standard Pullman sleeper in good order, and built in the way and upon the plan of most of the sleeping cars of the Pullman Company which were operated in this section of the country and on defendant's lines of railroad. The evidence unmistakably showed that the Pullman Company built most of its cars upon the same pattern or plan and considered it the best. The real dispute was as to whether the plan and dimensions of the ladies' dressing room made it dangerous, per se, and it was insisted that it was so, because this dressing room was not provided with a seat like the smoking and dressing room for men, and that it had no fixtures to hold on by the hand. The testimony, however, showed that the reason for making the smoking room larger than the ladies' dressing room and furnishing it with seats was that it was designed to afford accommodations for those who lounged and smoked therein, and a place for the porter to sleep in. There was no contrariety in the testimony that the maker of the car regarded it as safer and better not to have a seat or chair in the ladies' dressing room, nor handholds affixed to its walls, for several reasons indicated by the witnesses, such as the danger of projections on the wall, and the danger in a small room of falling over a chair or a seat therein.

The fact was also established beyond contradiction by the plaintiff's testimony that Mrs. Ozanne's feet were turned directly inwards, instead of straight forward in the usual way. This misfortune made it necessary that she pass one foot over the other at each step, and, while habit and instinct may have made this easy enough under ordinary circumstances, it may well account for her fall under the then abnormal surroundings, although she may have been unconscious of it in the quick happenings of that occasion. Especially may this be so, as no other fall of anybody in such a dressing room has ever occurred to the knowledge of old employés of the sleeping car company.

There was no claim nor testimony to show that there was any defect in the material nor in the structural perfectness of the car or of the ladies' dressing room—the only claim, we repeat, being that the plan, form, etc., of that room were necessarily dangerous, and that

it was, per se, negligent for the defendant to run or to use in its trains a car with a ladies' dressing room of that sort. While not stated in that precise form by counsel for the plaintiff, it must come to that in its ultimate analysis. The Circuit Court of Appeals, in the late case of Carnegie Steel Co. v. Albert Byers, 149 Fed. 667, said that:

"The burden, however, was upon the plaintiff to make substantive proof of some negligence—the .omission of some duty which the defendant owed to them."

With this settled rule before us, we are to determine whether upon the undisputed testimony it was negligence, per se, or negligence at all to run a car with such a ladies' dressing room in it as was found on this car. True, the plaintiff was hurt, but the testimony shows her to be the only lady and indeed the only person ever known to have been injured in such a room on any one of the Pullman cars in any part of the country within the company's history. In the light of such testimony we cannot hold that there was any negligence whatever in running such a car in the defendant's train. Certainly no negligence was proved, unless using that form of car with that plan of dressing room in it was of itself negligence. It would be most illogical to conclude that one instance under such circumstances as attended this one in any degree showed negligence, where so many instances in so many years showed perfect safety. In disposing of the demurrer to the petition in an opinion then delivered we took occasion to say:

"It is quite difficult to see that any cause of action is stated against the demurrant; but as the plaintiff's petition does not on its face show that the car in which the female plaintiff was riding was not constructed as the Pullman Company usually constructs its cars, nor according to the method which conforms to the standard adopted by that company as best suited to the purposes for which it builds cars, and, furthermore, because the petition squints at a contract between the female plaintiff on the one side and the two defendants jointly on the other, I have concluded to overrule the demurrer, and leave the case for more comprehensive consideration when we come to charge the jury. But it must not be supposed by counsel that the court has reached the conclusion that liability against either defendant could arise unless there was something more to bring on the injury than the swerving of the car when the train was turning a curve in the railroad track. Such a result under the laws of nature is inevitable under such circumstances, and must be presumed to have been within the contemplation of all parties when the trip upon the train in question was undertaken. Possibly that much risk must be regarded as having been assumed by the passenger, provided, of course, the defendants had come up to legal requirements as to care in the construction of the cars and the operation of the train."

In the recent work of Moore on Carriers, at page 603 (in section 5 of chapter 20), the author says:

"Carriers of passengers, especially in vehicles and conveyances propelled by steam or electricity, where the consequences of an accident from defective machinery are almost certainly fatal to human life, are bound to use every precaution which human skill, care, and foresight can provide, and to exercise similar care and foresight, in ascertaining and adopting new improvements to secure additional protection. It is their duty to adopt and use such means of safety as science has made known and demonstrated to be useful and effective, not unknown and untested practices, but those which, to some extent at least, have been used and deemed indispensable to safety. While it has been held that carriers of passengers are bound to keep pace with science and art and modern improvements in supplying safe vehicles, and

must adopt the most improved modes of construction and machinery and appliances of safety in known use, it is now more generally held by the courts that it is sufficient that they have all approved appliances that are up to the standard of those in general use, and which are necessary for the safety of passengers. But the rule does not impose upon carriers the duty of so providing for the safety of passengers that they shall encounter no possible danger, and meet with no casualty, in the use of the appliances provided by the carrier; and negligence cannot be attributed for the use of an appliance which has been employed, under varying conditions, upon countless occasions, and uniformly answered its purpose without injury to any one. And they are not bound to adopt and use a new and improved method because safer and better than the methods employed by them, if it is not requisite to the reasonable safety and convenience of passengers, and if the expense is unreasonably excessive."

We think the rule is that while a carrier of passengers must use the utmost diligence and care in providing reasonably safe cars, etc., for the persons it carries, such carrier is not an insurer of the safety of its passengers in the absolute sense. It has discharged its duty to its passengers in respect to its cars and trains when it has supplied the best instrumentalities that a highly prudent person would have supplied in the same business in the then known condition of the art and business of doing so. But whilst the carrier must rigidly perform all of these duties, the natural laws of motion superadd risks which the carrier cannot always guard against, even by the use of the utmost care, and such risks as those the passenger must be supposed to assume. The railroad track cannot always be straight. The transit of its trains must be rapid, and the swing of a car is inevitable when the train passes over a curve. This is unavoidable, and the consequences of it is one of the risks we have referred to. To say the least, the testimony in this case is overwhelming, if indeed it is not entirely uncontradicted, that the defendant, in respect to its cars, its trains, and the management thereof, came up to the standard of duty just indicated. In any event, the testimony is clear that no sort of negligence can fairly be imputed to the defendant, although, as we have seen, it is essential to entitle a plaintiff to recover to show by substantive proof that there was some negligence. It may not be inappropriate to remark that whilst the carrier can never, as between itself and the passenger, transfer nor shift its duty to the sleeping car company, yet the carrier's duties relate to safe transportation. It is not commonly supposed, nor has it ever been ruled, that the carrier is under any duty to provide dressing rooms for its passengers. The public know that the sleeping car company does that, and is paid for that convenience. Hence, if the instrumentalities of transportation are all inherently safe, and no negligence is shown, the carrier has performed its duty, and it may well be questioned in some future litigation whether the carrier can be held bound to see that the sleeping car company affords the highest type of convenient dressing rooms for any class of passengers who, in respect to this matter, are exclusively its patrons.

We may add that the rule as to a scintilla of evidence is not that by which the federal tribunals are guided. In the case of Detroit Southern Railroad Co. v. Lambert, Adm'r, etc., 150 Fed. 555, in an opinion very recently delivered, the Circuit Court of Appeals held that:

"The rule is well settled that where a motion it made for a peremptory instruction, the court must take that view of the evidence most favorable to

the party against whom the instruction is requested. So that in this case the plaintiff below was entitled to receive the benefit of all fair and reasonable inferences from the testimony."

A case, therefore, should not be taken from the jury, unless the testimony, when given a consideration most favorable to the plaintiff, and when the plaintiff has also been given the full benefit of every reasonable and fair inference to be drawn from the testimony, the court would still feel bound to set aside the verdict if one were rendered in plaintiff's behalf.

Having these propositions in mind, we nevertheless reach the conclusion that the plaintiff here has failed to show any negligence whatever, and consequently has failed to show any right to recover, notwithstanding the severity of her injuries and the magnitude of her misfortune.

It results that the defendant's motion must be sustained.