NORFOLK & W. RY. CO. v. BIRCHETT.

(Circuit Court of Appeals, Fourth Circuit.  July 15, 1918.)

No. 1597.

CARRIERS ⊙═318(4)—INJURY TO PASSENGERS—LURCHING OF CARS—NEGLI-
GENCE—EVIDENCE.

That a passenger fell from her chair from mere movement of car of
fast train does not make out a prima facie case of negligence; and her
mere characterization of the movement as a "terrific" or "violent" lurch
adds nothing from which negligence can be legitimately inferred.

In Error to the District Court of the United States for the Western
District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action by Harriet P. Birchett against the Norfolk & Western Rail-
way Company.  Judgment for plaintiff, and defendant brings error.
Reversed.

William Hodges Mann, of Petersburg, Va., and F. S. Kirkpatrick,
of Lynchburg, Va. (F. Markoe Rivinus, Theodore W. Reath, and
Joseph I. Doran, all of Philadelphia, Pa., on the brief), for plaintiff in
error.

Randolph Harrison, of Lynchburg, Va. (Harrison & Long, of Lynch-
burg, Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and SMITH, Dis-
trict Judge.

KNAPP, Circuit Judge.  Defendant in error, plaintiff below, recov-
ered judgment, entered upon the verdict of a jury, for injuries receiv-
ed by her while a passenger in a sleeping car on one of the railway
company's trains.  The accident occurred on the morning of January
12, 1916, just after the train west bound had left the station of East
Radford, Va., and plaintiff's account of what happened is this:

"I got up early, and went to the dressing room, and made my toilet, and
had completed it, and was seated in the chair, just putting a few finishing
touches to my waist or something, when this terrific lurch came.  I never
knew what it was, but that just threw me across the room.  In catching my-
self, I suppose I threw this arm (indicating the left) back, and it broke it.
It was just as though cars were coming together.  That is the way I felt
about it; a great lurch. * * *  Q. You say, when this lurch came, this
violent lurch that you have described, that it threw the cars together?  A.
Yes, sir; it seemed so to me.  I went with a crash.  It was that kind of a
lurch; just as if some one would take a football and kick it—I went with
just as much force across the car.  It all occurred very suddenly.  I was tak-
ing due precaution, and I was seated in the chair, firmly seated there.  It
was a chair that is placed in the ladies' dressing room for the use of ladies.
As I remember, the chair was turned over.  I remember seeing the chair out
of its natural position.  I was suffering, and had fainted, and don't remember
what position the chair was in, except that it was over. * * *  I had com-
pleted my toilet before the accident happened, except for a few finishing
touches, to place a ribbon or a piece of lace or something while I was sitting
in the chair.  I cannot state now how I was sitting in the chair, except that
I was sitting there firmly.  I know that is a fact, because I am cautious, very
cautious.  I am a good traveler, and have traveled a good deal, and this is
my first serious accident. * * *  I have never had an attack of vertigo

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in my life. I am as steady as can be. I could not explain how the accident occurred, or how I was thrown out of the chair—only a certain thing threw me out of my chair. * * * My height is 5 feet 2½ inches, and my weight 145 pounds. As to my strength, it is very good, very good."

The only negligence charged in the declaration or asserted at the trial was the unskillful and careless handling of the train, which is alleged to have caused the plaintiff's injury. It is not questioned that the roadbed and appurtenances were in good condition at the time and place, that the train equipment, including engine and cars with their various appliances, was also in good condition, and that the engineer and conductor in charge were rated among the best in the company's service. The sleeper in which plaintiff was riding was of recent construction, described as "one of the best class of cars the Pullman Company makes." There was no "accident," in the sense that anything broke or gave way or got out of order. The train went on, after plaintiff was hurt, the same as before, and no one else on board seems to have suspected that anything in the least unusual had happened, until she summoned the porter by ringing the dressing room bell. In short, there is not the slightest corroboration by testimony or circumstance of her statement of a "terrific" or "violent" lurch of the car, indicating improper handling of the train. On the contrary, we think it was proven as conclusively as the nature of such a case admits that nothing of the kind occurred. The engineer, who first heard of the accident at the next stopping place, an hour or so later, testified that the train was operated in the customary manner; that he could tell in the engine "if there was a run-up or a run-out"; that is, as he explained, the "slack" running up or running out; and that when informed of plaintiff's injury he could not recall that anything of the kind had happened that morning. The dining car steward, who learned of the occurrence within a few minutes, when he was going through the sleepers to announce breakfast, says that none of the china or glassware was broken or disturbed, as would be the result of a violent jerk or lurch. The train conductor, the two brakemen, the Pullman conductor, and the Pullman porter, all of whom knew of the accident almost immediately, testified that no unusual lurching or jolting of the car had been observed. To the same effect was the testimony of five passengers, four of whom were in the same sleeper with plaintiff and heard of her injury shortly after it happened. Not only do these witnesses say that nothing at all uncommon had been noticed, but their detailed statements of what they were doing at or about the time—for example, two of them had been shaving—tend strongly to show that any violent or unusual lurching of the car would have attracted their attention. In a word, so far as negative testimony could disprove what the plaintiff says was the cause of her accident, and it is not perceived that the case made by her could be otherwise met, the fact was established beyond reasonable doubt that she had the misfortune to be injured, not by an extraordinary or exceptional lurching from which negligent handling of the train might be inferred, but rather and solely by one or another of those swaying or tilting movements, however described, that the most skillful operation cannot avoid.

Moreover, according to the testimony of several witnesses, the plaintiff did not at the time claim that her injury was caused by any violent or unusual lurch of the car. The porter, whom she summoned to the dressing room, quotes her as saying: "I have hurt my arm, porter." The train conductor says:

"I asked her how she fell, how she got hurt, and her remark was she didn't know; that she was in the ladies' dressing room sitting in a chair, and the next she knew she was in her berth; that she didn't know how she came to be hurt or to fall at all."

One of the brakemen states that he heard the conductor ask her how she got hurt, and gives substantially the same version of her reply. The company's surgeon, who in response to a telegram boarded the train at its next stop in order to attend her, testified that he wrote down at the time her answers to certain questions, and produced his memorandum, which showed the following reply to the inquiry as to how the accident occurred:

"I had been to the toilet and was sitting in the chair. As the train was getting under headway from the last stop, I was thrown from the chair against the radiator and injured my left arm."

He further testified that:

"She did not complain to me of any rough handling, or excessive speed, or improper service on the part of the railway company."

In this connection it may be noted that the plaintiff's case, so far as the accident is concerned, rests wholly on her own testimony; her only other witness being a physician, who described the condition of her arm at the time of the trial. On cross-examination she was asked if she did not make to the surgeon the statement just quoted, and said in reply that she did not remember, but that she would not contradict him. In answer to other questions of like import, she repeatedly declared that she could not recollect, but did virtually deny having told the conductor that she knew nothing from the time she was sitting in the chair until she found herself in her berth. But after the defendant's witnesses had given the testimony above set forth, as to her statements directly after the accident, she made no attempt in rebuttal to controvert anything they said. And the significance of all this is that it amounts to a full admission that at the time her injury was received she did not attribute it, by anything then said or suggested to those with whom she talked, to a violent and unusual lurching of the car, or to any improper operation of the train from which negligence could be inferred.

The intimation that the train was running at excessive speed around a certain curve, and that the accident may have been caused by a severe lurch at that point, deserves perhaps a word of comment. It appears that the distance from the station at East Radford to the station at New River is 2.3 miles. Something less than a mile east of New River station is New River bridge, at the eastern approach to which there is quite a sharp curve. Elsewhere between East Radford and New River the track is straight, or curves but slightly. From the first-named station to the other the schedule time of this train was five min-

utes; but on the morning in question it made the run to New River, where it did not stop, in four minutes, which the engineer says was not unusual. The average speed was about 34½ miles an hour, and expert testimony shows that even the bridge curve could be passed at that speed without the least danger, while on the straight track a speed of 60 miles an hour or more would be perfectly safe. With the amplest allowance for time consumed and distance covered in getting under headway, it is therefore evident that the train could run this 2.3 miles in four minutes, as it often did, without improper speed at any point, and there is nothing to indicate that the fact was otherwise. Besides, the proof is convincing that the accident occurred before the bridge curve was reached. One of the brakemen says that he was on the rear platform, as his duty required, until the train passed through the East Radford yard, about half or three-quarters of a mile west of East Radford station; that he then started forward, and had gone through one sleeper, when he met the conductor and was told of the occurrence. He is positive that this was before the train got to the bridge, and his testimony to that effect is in no wise discredited. Indeed, it is confirmed by the plaintiff herself, who specifically states that she would not deny having told the surgeon that the accident happened "as the train was getting under headway from the last stop." It is sufficient to say that there is absolutely no basis for an inference that her injury was occasioned by excessive speed.

The foregoing summary makes it apparent that plaintiff's case rests wholly upon the fact that she fell, and her characterization, as a witness in her own behalf, of the car movement that caused the fall. Aside from the fact itself and the adjectives she uses, there is nothing of record which even suggests, much less tends to prove, that the train in question was improperly or unskillfully handled. If it can be said that her testimony, unsupported by a single circumstance, raises a presumption of negligence, that presumption was overcome by evidence so convincing as to leave no room for reasonable doubt that the accident was not caused by any such extraordinary lurch as she describes. The doctrine of res ipsa loquitur, upon which plaintiff really relies, has but limited application to a case of this kind. The injury for which she sues did not result from collision or derailment, or from the improper character or unsafe condition of any part of the train equipment. It must have been occasioned, as seems to us clearly established, by one or more of those car movements or motions, by whatever name called, which necessarily attend the most careful operation of fast passenger trains. In such case, where the accident is to the passenger, and not to the car or train, it has been held by courts of high authority that a presumption of negligence does not arise. Herstine v. Lehigh Valley R. Co., 151 Pa. 244, 25 Atl. 104; Weinschenk v. N. Y., N. H. & H. R. R. Co., 190 Mass. 250, 76 N. E. 662; Denver & R. G. R. Co. v. Fotheringham, 17 Colo. App. 410, 68 Pac. 978; Nelson v. Lehigh Valley R. Co., 25 App. Div. 535, 50 N. Y. Supp. 63. In the last-named case it was said:

"But it does not follow as a logical conclusion that, because a passenger is shaken or disturbed in his seat by the movement or lurching of a car run-

ning upon a curved road. the imputation of negligence must necessarily arise. That a passenger may, in a greater or less degree, be shaken or jostled, under such circumstances, is a matter of common knowledge and experience. As an ordinary incident to railroad travel, it is a consequence of the operation of counteracting forces, and is to be expected to occur. The courts must take notice of that which is a matter of common knowledge or experience, and when the evidence fails to disclose the lack of the required measure of care, as judged by the light of such knowledge, in view of the attendant circumstances, it ought not to be left to the conjecture of a jury. The plaintiff must give some proof from which there may be a logical inference of negligence, and the mere happening of the accident is not sufficient for the jury."

In Norfolk & Western Ry. Co. v. Rhodes, 109 Va. 176, 183, 63 S. E. 445, 448, a case of the same class as the one at bar, though the facts stated seem decidedly more favorable to the injured passenger, the Supreme Court of Appeals of Virginia says:

"In this case there is no direct proof of negligence, nor can negligence be reasonably presumed from the facts and circumstances disclosed by the record. It is a matter of common knowledge, as well as shown by the record, that trains or cars in passing rapidly over curves in the road, lurch, rock, or swing, and that this is unavoidable.. Railroad tracks cannot always be straight. The movement of trains is rapid, and the inevitable result is that the natural laws of motion cause the car to rock or swing or lurch as it passes over curves. This cannot be prevented and is one of the risks which a passenger assumes. * * * It is true that the plaintiff and one of his witnesses express the opinion that the rocking or lurching when the plaintiff was injured was unusual and extraordinary, but they testify to no facts which show that it was unusual or extraordinary. Foley v. Boston, etc., R. Co., 193 Mass. 322, 79 N. E. 765, 7 L. R. A. (N. S.) 1076. The mere fact that the plaintiff, who did not have hold of anything, was thrown or fell in the way he described, does not show that the movement of the train was unusual. No one was to blame for the injury so far as the record shows. It was simply one of those unfortunate accidents which sometimes happen, for which the law holds no one responsible."

An able and discriminating review of the subject will be found in Irvine v. D., L. & W. R. Co., 184 Fed. 664, 106 C. C. A. 600, in the course of which the Third Circuit Court of Appeals has this to say upon the question here considered:

"But, according to the contention of the plaintiff in error, a passenger who by reason of weakness or momentary vertigo, or by reason of the ordinary and regular movement of the train, should fall in the aisle of the car and suffer hurt or damage, would be permitted, in an action against the carrier company, to rest upon a presumption of negligence, as arising from the mere fact that he was injured or hurt, and to throw upon the defendant the burden of negativing negligence on its part. Such a proposition is as unsupported by authority as it is by reason. The counsel for the plaintiff in error has founded his argument upon what we have said was a misconception of the true meaning of the doctrine established by the decisions to which he has referred. This misconception has apparently arisen from considering certain language in the reported opinions of the cases, apart from the facts and circumstances with reference to which the opinions were announced."

The opinion of Judge Gray then proceeds to analyze a number of cases, among them Railroad Company v. Pollard, 22 Wall. 341, 22 L. Ed. 877, relied upon by plaintiff, and Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115, therein cited, and shows that they belong to a different class. The former, for example, was a case where in the operation of shifting or "drilling," when the train was within about 100 yards of

the station and running slowly, one car was bumped into another with such force that the plaintiff, standing at the moment, was thrown against the arm of a seat and injured. These facts being admitted, the court held in effect that it was properly left to the jury to say whether the specific act which caused the injury was negligently performed; that is to say, if the cars were bumped together with unnecessary and avoidable force, the negligence of the company might be inferred. In Stokes v. Saltonstall the passenger was injured by the upsetting of a stagecoach on an open road in daylight, which of itself would be enough to raise a presumption that the driver was negligent. The distinction between such cases and the instant case, with reference to any presumption arising from the mere fact of injury to a passenger, is so clearly and convincingly pointed out by the learned judge, in the opinion quoted from above, that nothing need be added to what is there said. Of C. & O. Ry. Co. v. Needham, 244 Fed. 146, 156 C. C. A. 574, L. R. A. 1918A, 1169, recently decided by us, it suffices to say that on the record in this court the question here discussed was not presented, and our reversal of the judgment was solely on the ground that a refused instruction should have been granted.

The plaintiff has cited no authority, and we have found none, which sustains her contention. The fact that she fell, under circumstances not seriously in dispute, does not make out a prima facie case of negligence, and her characterization of the car movement which caused the fall adds nothing from which negligence can be legitimately inferred. As was said in N. & W. Ry. Co. v. Rhodes, supra:

"It was simply one of those unfortunate accidents which sometimes happen, for which the law holds no one responsible."

In our opinion a verdict should have been directed for the defendant, as was done in the almost identical case of Ozanne v. Illinois Central (C. C.) 151 Fed. 900.

Reversed.