Plaintiff, widow of Willis R. Brott, filed this suit for $25,000 damages against the defendant railroad company. The petition alleges that her husband, upon his discharge from the Armed Forces of the United States on June 2, 1945, at New Orleans, Louisiana, purchased a ticket from the defendant carrier from that city to its division point at Fort Worth, Texas; that her husband boarded their train and his body was discovered the next morning on the right-of-way of defendant carrier at a point one-half mile south of Lake End station in Red River Parish, Louisiana. She alleged that the death resulted from her husband either falling from the train or being violently ejected and thrown from the train while same was in motion; that his death was the result of defendant's negligence and failure to use proper care. She contended that the circumstances were such that the doctrine of res ipsa loquitur is applicable and specifically pleaded same. *Page 802 
The defendant's answer admitted the contract of carriage and that plaintiff's husband's body was found on its right-of-way as alleged. Its defense was that:
"(a) At the time of the occurrence, the train was being operated in the usual and ordinary manner;
"(b) That the doors to the vestibules of each of the cars were inspected after the train left Natchitoches, which was the last stop prior to the accident, and were properly closed;
"(c) That all of the equipment of respondent was in proper order;
"(d) That the only way in which the deceased could have fallen from the train would have been by his own voluntary act in opening one of the doors to the vestibules and either falling or jumping therefrom."
The District Court gave judgment in favor of defendant and plaintiff has appealed.
The first discovery that an accidental death had occurred came when local residents found the body of plaintiff's husband, still clad in naval uniform, beside defendant's tracks south of its Lake End station in Red River Parish. Dr. Huckaby, Red River Parish coroner, testified that the right side of the head was crushed and that from the circumstances, he concluded that plaintiff's husband met instant death when he fell from or was thrown from defendant's train; that there was nothing to indicate any other kind of blow except the one to his head.
The Sheriff of Red River Parish was called. He testified that there was an indentation in the ground — a round impression — which looked like a man's head had hit the ground a short distance from the end of the rail ties; that near his body they found a drinking cup, a stub of a cigarette and on down the tracks where the body rolled, one of his shoes. The Sheriff thought that the indentation was too close for the man to have fallen "out of the side of the train" and testified that the body rolled 10 or 15 feet away from the shoulders of the track before it came to rest down in the ditch "a pretty good piece from the rail."
The train passed Lake End shortly after daylight, and deceased's body was found on the right-of-way a short time later. The conductor and others on the train remembered deceased as a passenger after he boarded the train at New Orleans the night before and at intervals during the night. No one testified as to what he was doing at the time the train stopped at Natchitoches (some 10 miles south of the fatal spot) or his actions during the last few minutes of his life on this earth. W.J. Richardson, conductor on defendant's train, testified that he "saw to it" that the vestibule doors were closed. He testified that after the Natchitoches stop — the last one before passing the fatal spot — he closed the vestibule door of the colored car and that the brakeman closed the vestibule door of the white coach which had been opened at Natchitoches. He testified that after passing Lake End he went from his position in the first white coach back to the Pullman and found the vestibule doors all closed.
The brakeman — an extra conductor — testified that he "tried all vestibule doors" in the white cars after he left Alexandria. He testified that after the Natchitoches stop (the last stop prior to Lake End), he re-boarded the train at the head of the white car and that he again tested the vestibule doors and found them locked. He further testified that he performed all the duties required of a brakeman. McNott, the military policeman on duty, testified that he went through the train with the conductor after it left Alexandria and found all the vestibule doors locked safely. He testified that after leaving Natchitoches he went through the entire train with the conductor and checked the doors again and found them locked. It is possibly noteworthy that this witness is not an employee of the defendant company and should have no interest in defeating the claim of plaintiff whose husband was also in Service.
After a study of the record, we are in agreement with the District Judge and find the record and circumstances leave the cause, manner and method of deceased's exit from the train unexplained, and that the most likely explanation is that death was caused by a fall through one of *Page 803 
the vestibule doors, all of which were in proper working condition and closed at the time the train left Natchitoches 10 miles south of the fatal spot.
We will first consider plaintiff's claim that the doctrine of res ipsa loquitur is applicable.
[1] As stated in Corpus Juris, Volume 45, 1193, this doctrine is applicable to an injury or accident which in ordinary course of things would not have happened if those who had management or control had used proper care. However, as stated in Gershner v. Gulf Refining Co., La. App., 171 So. 399, 402, the facts and circumstances must reasonably exclude every other cause of the accident except those causes which can be traced to the negligence of the defendant or its servants. In that case the Court stated: "The very nature of the doctrine (res ipsa loquitur) renders it inapplicable to a case where the facts and circumstances surrounding the accident show that * * * the accident might reasonably have been caused by other persons or agencies than those for whom the defendant is responsible. In other words, the facts and circumstances must reasonably exclude every other cause of the accident except those causes which can be traced to the negligence of the defendant or its servants."
[2] In the case before us, the accident resulted from the unfortunate action of the deceased in putting himself in the position to fall out of some opening (likely a vestibule door), or from the action of some other person, one who may or may not have been an employee of the defendant, in forcibly ejecting him through an opening. Since, under the facts as we find them, either the deceased himself or some third person, not an employee of the defendant, could have opened the vestibule door and either the deceased could have fallen out of the opening unaided or through the action of a third person who may or may not have been an employee of defendant, we conclude that the doctrine of res ipsa loquitur is not applicable under the facts and circumstances of this case.
We will next examine the Louisiana law and authorities relative to the degree of care required of a carrier toward its passengers.
[3] In the case of Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376, the Supreme Court of Louisiana laid down the rule that a carrier is not required to show how and why a passenger was injured to bar recovery. The Court recognized the rule that under Article 2754 of the Revised Civil Code, the carrier must "in order to escape liability for damage to goods and merchandise * * * show affirmatively the exact cause of the accident," it not being sufficient to merely show "that it was free from negligence." In the case of a passenger, the Supreme Court laid down the different rule that where a passenger is not safely carried to his destination, the burden of proof is on the carrier to show that it was free from negligence which might have caused the accident and that in order to show itself free from negligence, the carrier is not necessarily required to show how and why the passenger was injured.
Paragraph 3 of the syllabus in that case reads: "Though carrier has burden of showing that it was free from any negligence which might have caused injury to passenger, it is not required to show how and why passenger was injured in order to bar recovery."
In the case of Pierce v. Toye Bros. Yellow Cab Co. et al., La. App., 8 So.2d 562, 565, the Court cited the Cusimano case and others and stated that: "* * * a carrier is not the insurer of the safety of a passenger and that by showing that there was no negligence on the part of the carrier's employee or on the part of the carrier, and that the equipment was not defective, the carrier may avoid liability."
In the case of Hart v. Gulf, M. N. R. Co., La. App., 167 So. 166, 168, the injury to the passenger occurred when a person — not an employee of the railroad — accidentally struck and broke a window pane. The carrier produced the porter and two car inspectors who testified that the equipment on the coach involved was in sound condition; that the window in which the pane was broken was examined shortly *Page 804 
after that and found to be in good working order. The Court rejected plaintiff's demand against the carrier and stated: "To hold the defendant responsible would be to decree it an insurer of the safety of its passengers."
[4] In the case at bar, the defendant established that the train coaches used by the deceased were inspected and found to be in good order, and that the windows and vestibule doors both before and after the accident were found to be in good working order, and that the vestibule doors were closed after the train departed from Natchitoches, the last station stop preceding the train's passing the spot where deceased's body was found. The testimony of defendant's own employees was corroborated by that of a military policeman assigned at the time to duty on that particular train. (This witness had been assigned to military police duty on trains for over a year prior to the accident, having served on three other railroads besides that of defendant and being familiar with railroad equipment, the operation of trains and the necessity for keeping vestibule doors closed.)
The operation of the train was normal, there were no sudden stops or lurches. There is no indication of murder or suicide. The manner of deceased's exit from the train is, as far as this case is concerned at least, unknown and unexplained.
[5, 6] If the carrier is the insurer of its passengers, the defendant is liable. However, Louisiana cases have not gone this far. The defendant as a carrier owes to its passengers the highest degree of care. When it is shown that deceased met his death while a paying passenger, the carrier may avoid liability if it shows its own freedom from negligence by a preponderance of testimony.
We conclude, as did the District Court, that the defendant has shown by the testimony of its employees on the train and at the division point that the equipment used was in workable and safe condition and that the crew members used proper care in handling the train on its journey and in keeping the vestibule doors closed. The defendant has discharged the burden of showing that it was free from negligence. It was not required to go further and show how and why its passenger was injured. Cusimano v. New Orleans Public Service, Inc., 170 La. 95,127 So. 376.
For the reasons assigned, the judgment of the District Court is affirmed, with costs.