**NORFOLK & W. RY. CO. v. ESTEPP.**

No. 11683.

United States Court of Appeals
Sixth Circuit.

June 10, 1953.

William J. Baird, Pikeville, Ky. (W. W. Coxe, Roanoke, Va., Baird & Hays, Pikeville, Ky., on the brief), for appellant.

W. A. Daugherty and Henry D. Stratton, Pikeville, Ky. (P. B. Stratton, Pikeville, Ky., on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment of the District Court entered upon a jury verdict in favor of plaintiff's [1] administrator. In a previous appeal in the same case, 192 F.2d 889, 893, this court reversed the summary judgment of the District Court entered on the pleadings in favor of the defendant. The District Court held that there was a complete absence of probative facts to support even a conjecture from which the negligence of the defendant could be inferred. We held that *res ipsa loquitur* applied to the cause of action stated. We decided that in the posture of the case the defendant was required to proceed and a summary judgment in its favor was erroneous. We said:

"The defendant has made no explanation by answer, by affidavit, or by evidence. The train was under the exclusive control of the defendant. Nothing is shown as to the method of operating the train, as to its physical make-up, nor as to any circumstances

---

[1]. The parties will be denominated as in the court below.

which might shed light upon the accident. From this record it does not appear 'what the truth is' and 'that no genuine issue remains for trial'. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L. Ed. 967."

The case proceeded to trial and the following facts were shown, which are not disputed. On June 22, 1949, Larry Estepp, a boy eleven years and eleven months of age, was traveling from Peebles, Ohio, to Delorme, West Virginia, on defendant's train No. 16 in the company of Mrs. Florie Estepp, his foster mother, and Mrs. Mae Phillips, sister of Mrs. Estepp. Larry, who was the grandson of Florie Estepp's husband, had been taken into her home when he was two years old and had lived with her for about seven years. There was great affection between them. Mrs. Estepp said she would have adopted the boy but for the expense. In 1946 Larry's mother asked to have him back and he lived with her for several years. In 1949 he visited his foster mother at her home in Peebles, Ohio, and on the day of the unfortunate accident was returning with his foster mother to his mother's home in Kentucky. He did not wish to go back and before starting cried over the prospect. When the train stopped at Portsmouth, Ohio, for some twenty minutes a flagman saw him standing in the aisle of the vestibule while the vestibule door was open, looking over to the hills. The flagman ordered him back into the car.

Larry, his foster mother and Mrs. Phillips were sitting at the rear of one of the coaches and the boy at first was opposite the two women. Later, before reaching Portsmouth, he asked and received permission to sit behind them. Shortly after leaving Kenova, West Virginia, Larry's absence was noted and reported to the conductor, who searched the train without finding him. Three days later his body was discovered near Hanging Rock, Ohio, below the track of the railroad on the side on which Train 16 was proceeding, some twenty feet down a bank. The track at that point was straight and there had been no unusual lurch in the operation of the train. It was not asserted that the boy had

been struck by the train or by any part thereof. Counsel for plaintiff agree "that the child must have left the train by either the right rear vestibule door opening of Car No. 1670, or the right front vestibule door opening of Car No. 1667." The conductor and the brakeman testified that the doors in question were closed after leaving Portsmouth and this was not controverted. The plaintiff contends that this is not equivalent to testimony that the door was latched or in fact fastened and that this constituted negligence on the part of the defendant. The vestibule door could be opened by lifting a latch at the top which could be reached by a person five feet tall. Larry was 5 feet 4 inches tall, physically strong, and well acquainted with trains. He had traveled to New York and other places on the railroad.

Defendant's main contention is that the court erred in submitting the case to the jury. Plaintiff urges that under the previous opinion of this court *res ipsa loquitur* is the law of the case and that substantial evidence of negligence exists. We think that defendant's contention must be sustained.

While we held in the previous appeal that *res ipsa loquitur* was applicable under the complaint filed, since it averred that the accident was caused by an instrumentality in the exclusive control of the defendant, we specifically withheld conclusion as to the outcome on remand. We stated in the opinion "At the trial of the case it may appear that a directed verdict for the defendant is required, cf. Dunning v. Kentucky Utilities Co., supra [270 Ky. 44, 109 S.W.2d 6], or that the case should be submitted to the jury * * *."

█ On the facts developed at the trial the cause of action set up in the complaint was negatived. In the first place no evidence was presented that the train or any part of it caused the injury. This is not the usual case of train accident due to collision, derailment, the collapse of a bridge, the fall of baggage, the washing away of a railway bank, or injury from passing trains or objects near the track. In such case an inference arises from the happening of the accident that negligence exists, because

such accidents do not occur in the absence of negligence upon the part of the carrier. Here the only part of the train claimed to be involved in the accident was one of the vestibule doors. Defendant showed that these were not defective and also showed that no violent lurch or bump occurred at the point of the accident which might have jerked the boy out on the track.

Moreover, the testimony of the foster mother, witness for the plaintiff, shows that Larry was unwilling to return to Kentucky and indicates a genuine possibility that in an effort to leave the train he opened the door, miscalculated the speed, which was 70 miles per hour, and jumped out. The parties agree that Larry went out of the vestibule door. The situation thus exists in which an unexplained accident may be attributed to one of several causes, for some of which the defendant is not responsible. If Larry himself opened the door and fell or jumped out, the defendant was not liable. In such cases *res ipsa loquitur* does not control. Yellow Cab Company v. Hodgson, 91 Colo. 365, 14 P.2d 1081, 83 A.L.R. 1156, and note; Ash v. Childs Dining Hall Company, 231 Mass. 86, 120 N.E. 396, 4 A.L.R. 1556, and note.

■ No special obligation devolved upon the carrier to watch Larry's movements. Since he was in the custody of two adult persons, the railway was not required to extend in his particular case more than the usual high degree of care due to all passengers.

■ Since the defendant's evidence refuted the charge of negligence on its part, the inference arising from the application of the *res ipsa loquitur* rule was completely rebutted. As there was no evidence of negligence and the thing causing the injury was not within the carrier's control, the rule of *res ipsa loquitur* disappeared as an aid to decision. McGinn v. New Orleans R. & Light Co., 118 La. 811, 43 So. 450, 13 L.R.A.,N.S., 601, 618; Brown v. Union Pacific Railroad Company, 81 Kan. 701, 106 P. 1001, 29 L.R.A.,N.S., 808, and cases cited. Here it was shown that the doors were accessible to all passengers and were easily opened by persons shorter than Larry. We

are cited to and have found no case holding that the railroad company rested under an obligation to lock the vestibule doors. The locking of passenger cars on a train for safety so as to prevent the entrance of robbers is not the usual routine. The doors in general are built so as to be easily opened for and by passengers as well as by trainmen. The safety of passengers as well as their convenience requires this.

■ The operation was usual and normal and hence no inference of negligence arises. Burton v. West Jersey Ferry Company, 114 U.S. 474, 477, 5 S.Ct. 960, 29 L. Ed. 215; Norfolk & W. Railway Company v. Birchett, 4 Cir., 252 F. 512, 5 A.L.R. 1028. Since a car door is not under the exclusive control of the carrier but is used constantly by the passengers, negligence on the part of the carrier will not be inferred but must be proved. Brott v. Texas & Pacific Railway Company, La.App., 35 So. 2d 801.

A decision which parallels the situation herein is Brown v. Union Pacific Railroad Company, supra. There the deceased was a passenger on a coach of the defendant railroad from Kansas City, Mo., to Abilene, Kan. The train stopped at the station in Abilene. A few minutes after it had passed to the west the deceased was found some two hundred feet east of the depot lying close to the main track, with the legs dissevered and many bruises and wounds on other parts of the body, which had been dragged for some thirty feet. The court found that the deceased had been run over by the wheels of the train. In this way the Brown case is stronger than the instant case, for here there is no evidence that the train caused the death of the boy. In the Brown case, supra, no one saw the deceased leave the coach and no one saw him fall. The train was a vestibule train and plaintiff claimed that the vestibule of one of the coaches had been carelessly opened before the train arrived at the depot, that the deceased was waiting in the vestibule to alight, and that the train jerked and threw the deceased out of the vestibule. No evidence was given in support of these allegations. The court found the circumstances necessarily indicated that one of the vesti-

bules was opened at least 300 to 400 feet before the train stopped at the station and thus made a second finding more favorable to the plaintiff than can be made under this record. However, the court pointed out that the deceased was accustomed to traveling upon trains and probably knew how to open the vestibule, and declared that it was a matter of conjecture how the deceased happened to fall. The fact that circumstances were shown which indicate that the defendant might have been guilty of negligence was not sufficient, the court held, especially when the evidence suggested with equal force that the injury might have resulted without fault on the part of the defendant. Judgment in favor of the railroad was affirmed.

This decision squarely supports our conclusion that, since no negligence was shown, the motion to direct a verdict for defendant should have been granted.

The judgment is reversed and judgment is entered in favor of the defendant.