## Harcourt & Co. v. Redmon.

(Decided November 24, 1911.)

### Appeal from Jefferson Circuit Court.
### (Common Pleas Branch, Third Division).

1. **Personal Injury—Action for Damages—Dangerous Machine—Instructions.**—Plaintiff was injured while feeding an embossing press, attached to which was a "trip" used to prevent embossing when the sheet was improperly placed. Though an experienced feeder on other machines she had had no experience in operating the machine which injured her. There was a safe and a dangerous way of handling the "trip." Held, that as she was put to work by defendant's foreman without being warned of the danger as to the handling of the trip, it cannot be said as a matter of law that she was guilty of contributory negligence.

2. **Same—Defective Machinery.**—Evidence that parts of a machine not connected with or responsible for plaintiff's injury were defective, should not be considered.

3. **Evidence—Catalogue—Cross Examination.**—It is improper to permit a witness on cross examination to read an extract from a manufacturer's catalogue describing the machine at which plaintiff was injured, even though the witness admits that the description, with certain exceptions, is correct, and where the language read contains the statement, "to operate the Curtis press a pressman and feeder are required. Both can be taught their respective duties in from ten days to two weeks, &c," thus supporting plaintiff's claim that experience was necessary in order to enable the feeder properly to handle the press, the admission of the evidence was prejudicial error.

CHARLES H. SHIELD, CAMDEN R. McATEE for appellant.

JOSEPH M. LEE, CARROLL & CARROLL, T. C. CARROLL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Lula Redmon, while feeding an embossing press in the establishment of defendant, Harcourt & Company, a corporation, had her little finger and third finger on her right hand injured and brought this action against defendant to recover damages. The jury returned a verdict in her favor for $500.00, and the defendant appeals.

Plaintiff had been in defendant's employ for about two years and during that time had been engaged in feeding a machine known as the Carver Embossing Press.

She was one of the most capable employes defendant had. In feeding this press it was necessary, when the sheet was placed improperly so that the stamp would be crooked, to stop the press by throwing a lever located to the right of the feeder.

In the month of January, 1909, defendant installed in their printing establishment a new machine, known as the Curtis Embossing Press. This machine, while similar in many respects to the Carver press, differed therefrom in certain particulars. The chief difference between the two presses is that the Curtis press has an attachment known as the "trip" or "throw-off," which is used to prevent the embossing without stopping the machine when a sheet is improperly placed in the machine. Another difference is that the Curtis press can be stopped only by the use of a lever situated at the left of the feeder. The upright plunger between the table and the small hinge section of the "throw-off" is supported just above the table surface by the spring at its back. The top cross-piece moves up and down in a space of about six inches when the press is running and the "throw-off" is fastened to its lower face by a nut at the right of the plunger top. The "throw off" is on top of the plunger and when the cross-piece descends it presses the "throw-off", and this forces the plunger downward until the die is upon the paper placed there by the feeder In this way the embossing is completed. The die is attached to the lower end of the plunger, and its reciprocal die is fixed below the level of the table upon which the paper is placed. When the feeder pulls the "throw-off" out, the cross-piece misses the plunger top by just the thickness of the "throw-off;" in which event no impression is made on the paper. The cross-piece moves up and down in a space of about six inches and the speed of the machine is regulated according to the character of the work done. It is the feeder's duty to sit at the press with her stock of paper at her side and with her right hand to place a blank sheet of paper under the die. When the die has stamped she removes the paper and immediately puts another sheet in until her work is finished.

The Curtis press was installed in January, and the accident occurred on February 23, 1909. Plaintiff had never worked at the machine in question before; it had been fed by another employe who failed to be present on that day. Plaintiff was directed to work at the Curtis machine by defendant's foreman. According to plain-

tiff's evidence she told the foreman that she did not care to feed the press because she was afraid of it; that even the sight of it made her nervous. She also told him she had never had any instruction about the use of the machine and knew nothing whatever about it. The foreman then told her she was the best girl he had and she would have to feed it. She again told the foreman she was afraid of it because she thought it was dangerous. Whereupon he said there was no danger whatever with the press. According to the foreman's evidence, plaintiff did not protest against being put to work at the Curtis press, but stated that she would work there if he would not fuss at her. The foreman admits that he did not instruct plaintiff, because she was the best operator he had and no instructions were necessary.

The "trip" or "throw-off" has a handle about two inches in length, and when plaintiff attempted to work the "throw-off" for the purpose of stopping the embossing, it stuck and did not work, and her fingers were caught and injured. Plaintiff did not understand the machine, and when she went to work she was not instructed how to manage it, nor warned as to the danger. The only thing the foreman told her was to be sure and throw the "trip." Plaintiff's evidence is corroborated by the testimony of Nellie Ross, who was plaintiff's assistant on the morning she was injured, and who was present when the foreman put plaintiff to work on the Curtis machine. Miss Kinsella, the regular employe who was engaged in feeding the Curtis press, also testified that the Curtis press was a dangerous machine.

While the testimony of Harcourt, the president, and of the foreman, is to the effect that the operation of the "trip" was a simple matter, and that no instructions were necessary to guide an experienced feeder, they both explained that the proper way to operate the "throw-off" is to take hold of it with the palm of the hand upward. When operated in this way the fingers could not be caught. On the other hand, if operated with the palm of the hand downward, one's fingers might be injured. The mistake plaintiff made was in operating the "throw-off" with the palm of her hand downward.

Upon these facts the defendant insists it was entitled to a peremptory instruction, and relies upon the rule announced in Hutchinson v. Cohankus Mfg. Co., 112 S. W., 899. In that case, however, the employe placed his hand upon a revolving cylinder. He knew the cylinder had

teeth on it and was revolving, and his duty did not require him to place his hand in that position. Here defendant's witnesses admit that there was a safe way and a dangerous way of handling the "throw-off." It was part of plaintiff's duty to use the "throw-off." Admitting that the injury was caused by plaintiff's improper handling of the "trip," we can not say, as a matter of law, that with only an hour's experience, and with no warning as to the danger and no instructions as to how to use the "trip," she was guilty of contributory negligence, thereby precluding a recovery. We, therefore, conclude that the question was one for the jury.

During the course of the trial the court permitted evidence to be given of the breaking and repair of certain parts of the press in question which were not in any way connected with the accident. Plaintiff was injured while handling the "trip." It matters not how defective other parts of the press were, as such defects did not in any way contribute to plaintiff's injury. This evidence, we think, was improperly admitted.

During the cross-examination of defendant's foreman plaintiff's attorney called his attention in the description of the Curtis press, contained in the Curtis catalogue, and asked him whether or not this description was correct. The foreman replied that it was, with the exception of the rate of speed set out in the catalogue. The foreman was then permitted to read the description to the jury. Contained in the description is the following: "To operate the Curtis press a pressman and feeder are required. Both can be taught their respective duties in from ten days to two weeks, and will be able to average the speed we claim," etc. It is insisted by counsel for plaintiff that the description in question was admissible because the foreman was cross-examined as to the accuracy of the description, and he testified that it was correct, with certain exceptions, and thus made the description his own testimony. Rules of evidence do not permit the introduction of books or catalogues in such manner. If the language upon which the witness was cross-examined, and which he read to the jury, were confined merely to a description of the press in question, we would not be inclined to hold that the trial court erred to appellant's prejudice in permitting the description to be read, but, manifestly, it was improper to get before the jury, by this indirect method, a statement to the effect that the pressman and feeder could

be taught their respective duties in from ten days to two weeks. From this statement it could be argued that even the manufacturer of the press admitted that it took from ten days to two weeks to teach a person how to feed the machine, whereas the plaintiff had just been put to work at the machine and had no experience whatever, and, therefore, did not know how to operate the machine. Viewed in this light, we think it was prejudicial error to permit the statement from the catalogue to be read to the jury. Plaintiff predicated her right to recover, both on the defective condition of the machine and her inexperience, and failure on the part of defendant to warn and instruct her. The case was submitted to the jury on both theories. After carefully reading the record, we fail to find any evidence tending to show that plaintiff's injury was due to a defective condition in the machine. She, as said before, was injured while handling the "trip." She claims that the "trip" stuck and would not work. It is not shown, however, that the "trip" was defective in any way. On the contrary, the evidence for defendant shows that it worked when properly handled. The mere fact that it stuck and did not work when plaintiff handled it, is doubtless due to the fact that she handled it improperly. We, therefore, conclude that plaintiff's whole case depends upon whether or not the machine was dangerous for an inexperienced person, and whether or not defendant failed to warn her of the dangers and to instruct her in the operation of the machine, and whether or not plaintiff exercised ordinary care for her own safety. Upon the next trial the court will submit the case upon this theory alone.

For the reasons given, the judgment is reversed and cause remanded for further proceedings consistent with this opinion.