## Kentucky Public Service Company v. Topmiller, Administratrix.

(Decided July 1, 1924.

### Appeal from Warren Circuit Court.

1. Evidence—Witness Held Competent to Testify as to Electricity. —Testimony that witness had been associated with electric light company and had superintended installation of numbers of electric light systems, and had studied electricity, was sufficient to render competent his expert testimony as to electricity.

2. Electricity—Evidence that Transformer Other than that Involved was Struck by Lightning Held Admissible.—When there was some evidence that striking of one electric transformer by lightning, affected and rendered dangerous the one involved in the accident sued for, evidence that the first was struck was admissible.

3. Electricity—Whether Lightning Striking One Transformer Affected Another Held for Jury.—Whether striking of one transformer by lightning affected and rendered dangerous another transformer nearby held for jury, when there was some evidence to that effect.

4. Trial—Court should Limit Purpose of Testimony.—Where testimony that one transformer was struck by electricity was admissible only to show condition of another transformer, dangerous condition of latter causing electrocution of one turning off a light, trial court should have so admonished jury.

5. Evidence—Extracts from Technical Books Inadmissible.—Extracts from technical books are inadmissible in evidence, and court erred in permitting them to be read to jury upon testimony of witnesses that they were standard authority, though an expert may be contradicted by reading standard works to him on cross-examination.

6. Appeal and Error—Reading of Quotations from Standard Books ·on· Electricity Held Error and Prejudicial.—Reading to jury quotations ˙from standard books on electricity held prejudicial as well as erroneous in action for death of consumer of electricity by electrocution.

7. Electricity—Negligence as to Consumer Held for Jury.—Whether power company was negligent, as to consumer electrocuted when turning off light, by failing to use lightning arresters on pole and device for grounding secondary wire at consumer's office, held for jury.

8. Electricity—Highest Degree of Care Required.—A lighting company is required to exercise very highest degree of care and skill in installation, construction, and operation of its plant when handling currents of electricity of 2,200 volts, and should provide itself with known necessary devices to control its currents and prevent passing of dangerous currents into houses of patrons.

9. Electricity—Ordinance Held Not to Bar Use of Ground Wire.—Ordinance concerning ground return wires held not to prohibit ground wire simply running into ground and anchored to piece of metal.

10. Negligence—General and Specific Instruction on Contributory Negligence Confusing.—Court should not give both a general instruction on contributory negligence and a specific instruction thereon, as they may confuse jury.

THOMAS, THOMAS & LOGAN for appellant.

CHANEY & DIXON and RODES & HARLAN for appellee.

Opinion of the Court by Commissioner Hobson—
Reversing.

Jesse E. Topmiller, as administratrix of her husband, Ben Topmiller, brought this suit against the Kentucky Public Service Company to recover for the death of her husband.

The company maintains on its primary wires in Bowling Green a current of 2,200 volts of electricity. It maintains on its secondary wires, for lighting purposes, a current of 110 volts. It maintains transformers for the purpose of reducing the high voltage to the lower voltage and from these transformers the wires are run out for lighting purposes to the light customers.

Ben Topmiller was an ice and coal merchant. He had an electric light in his office; back of his office was a large ice box, and in this he also maintained an electric light. Between the front room and the ice box was a passway about three feet wide, floored with boards which rested on timbers 2x4 inches, and these in turn rested on the ground. On the side of the ice box, nearest the door leading in the office and near the corner of the ice box, was the electric switch for turning out the light. In front of the ice box there was no flooring and the ground here was usually wet from putting in and taking out ice. The door of the ice box opened at the front, where there was a driveway for putting in and taking out ice and also the coal. The office fronted on Main street opposite the railroad freight depot, and on the opposite side of the street and next to the freight depot was a pole on which was the transformer that supplied the current for lighting purposes, both to the freight depot, Topmiller's place of business and several other houses. About 75 yards south of this pole and on the same side of Main street there was another pole opposite the Eutopia Hotel, on which was a transformer which supplied the current for lighting purposes to the hotel and other houses near it.

On September 4, 1922, there was a severe electrical storm in Bowling Green about eleven o'clock in the morning. A bolt of electricity struck the pole at the Utopia Hotel and wrecked the transformer. Pieces of the insulation and other material from the pole were found on the ground afterwards. A person near the other pole at this time saw smoke pouring out of the transformer on that pole. The transformer contains two coils and between them a nonconducting oil medium. This smoke possibly came from the burning of this medium. The lights supplied by the transformer at the Eutopia Hotel all went out. The lights supplied by the pole at the freight depot did not go out, but the boy employed in Topmiller's office, when his hand touched the switch on the ice box, received a shock shortly after this, which knocked him down, but did not hurt him seriously. Mr. Topmiller was not there then and when he came in, a little before twelve o'clock, the boy told him about it. Mr. Topmiller said his shoes were wet and he said he had been out in the coal yard and his shoes were wet. The Public Service Company was notified that the lights had gone out at the Eutopia Hotel, and between one and two

o'clock its man put in a new transformer there and the lights went on again. They made no examination of the pole opposite the freight depot, as there was no complaint there about the lights. About four o'clock Topmiller came in, after delivering ice, and after taking off his overshoes, seeing the light burning in the ice box, went to it and undertook to turn off the switch. When he did this he was immediately electrocuted. The burns on his hands, which touched the switch, and the effect on his body showed, according to the testimony of the experts, that he had received the high current of 2,200 volts.

On the trial of the case there was a verdict and judgment for the plaintiff for the sum of $25,000.00. The defendant appeals.

Topmiller was forty-six years old; his net earnings were approximately $7,000.00 a year; he was a vigorous, healthy man and it is not complained that the verdict for $25,000.00 was excessive.

It is insisted that the court erred in allowing Dr. Julius Topmiller to testify as an expert. He testified that he was forty-one years old; that he had made a special study of electricity and electric lighting from his youth; studying the text books put out by the International Correspondence School at Scranton, Pennsylvania, and the works of Terrell Croft, which are considered works of standard authority; that for three years he was associated with the Country Home Electric Lighting Company, and he superintended the installation of numbers of electric lighting systems while connected with that company and had also installed his own electric lighting system. This testimony, showing his actual experience, was sufficient to admit his testimony. The rule on the subject is thus stated in 11 R. C. L. 574:

> "He must have acquired such special knowledge of the subject matter about which he is to testify, either by study of the recognized authorities on the subject or by practical experience, that he can give the jury assistance and guidance in solving a problem to which their equipment of good judgment and average knowledge is inadequate. If he can qualify under this test he may testify, otherwise not."

The testimony as to the injury to the transformer at the Eutopia Hotel was properly admitted. It is conceded in the evidence that lightning when it strikes the

wires follows them. That transformer was only about 75 yards from the other. Smoke was pouring out of this transformer when the transformer at the Eutopia Hotel was shattered by the stroke of lightning. What subsequently happened can only be properly explained by proof of all the surrounding circumstances. A sufficient connection was shown to warrant the jury in inferring that the transformer at the freight depot was affected by the stroke of lightning, which struck the other transformer. At least there was some evidence warranting this conclusion, and when there is any evidence the question is for the jury. But, of course, this evidence is only admitted insofar as it may serve to show the condition of the transformer at the freight depot or negligence as to it, and on another trial the court will so admonish the jury.

On the trial of the case counsel read quotations from the work of Terrell Croft and also quotations from the International Electrical Code to the witnesses introduced as experts, telling the witness what book he was reading from and then had the witness to state that the book was standard authority and that what he read was correct electrical practice. These extracts from the book should not have been read to the jury. The rule on this subject is thus stated in 10 R. C. L. 1160:

> "It is hardly necessary to say that as a rule printed books or publications of any sort are not received in courts of justice as evidence of any fact stated in them, however practically useful they may be as guides to professional or business men, for the reasons, among others, that the statements in the books are not made under oath and no opportunity for cross-examination of the author is furnished."

The printed page has an unconscious influence over us all. What is read from a book, recognized as authority, has more weight than the same expression from the mouth of a witness. The world has not changed since Burns wrote:

> "A chiel's amang you takin' notes,
> And faith he'll *print* it."

A passage may be found in one book which may produce a very different impression from that produced by other passages in the same book, and a very misleading impression may be made by reading out of a book to a

jury, especially where technical terms are used in a different sense from the common use of words. When an expert is introduced he may be contradicted by reading to him standard works on the subject and asking him on cross-examination if this is the true rule, but the court has never allowed books to be read on direct examination to sustain the plaintiff's witnesses. Harcourt Company v. Redmon, 145 Ky. 512, Travellers' Ins. Co. v. Davies, 152 Ky. 600.

It is earnestly insisted that the reading of the extracts from these books was not prejudicial to the defendant on the whole record. But this evidence went to the turning point of the case. The court instructed the jury that it was the duty of the defendant in the construction, maintenance, operation and management of its system of electric lighting, including its poles, wires, transformers and other appliances and equipment, to exercise the highest degree of care to protect the plaintiff's decedent while in his office building from injury and death therefrom; and that if they believed from the evidence that the defendant failed to exercise such care and negligently caused or permitted a high current of electricity, dangerous to human life and greater than was reasonably necessary to conduct its business of lighting the decedent's office building, to enter said building and then and there and as the direct result of such negligence said current of electricity came in contact with plaintiff's decedent while he was exercising ordinary care for his own safety and thereby directly produced and brought about his death, they should find for the plaintiff. He also told the jury that negligence, as used in this instruction, means the failure to exercise the utmost care and skill known and which may be reasonably employed under the same or like circumstances. The extracts read from the books went clearly to show that the highest degree of care known and which may be reasonably employed under like circumstances was not used. The evidence by the experts was contradictory, for the experts introduced by the defendant did not agree with the experts introduced by the plaintiff, and in this conflict of the experts we cannot speculate as to the effect that the printed books, which were proven to be of recognized authority, may have had in bringing about the verdict.

"It is not for us to say what would have been the effect of the deposition had it been before the

jury. Considered in connection with the other testimony for appellant, it may have been sufficient to cause a contrary verdict." Moore v. Shannon, 137 Ky. 609.

"In view of the fact that the question in issue was a close one, and the evidence may have had a controlling effect on the jury, we conclude that it was prejudicial error to permit him to testify on the question under discussion. L. & N. R. R. Co. v. Burch's Admr., 155 Ky. 736.

"To the same effect see Harcourt v. Redmon, 145 Ky. 512, Duff Construction Co. v. Alford, 149 Ky. 599, L. & N. R. R. v. Murphy, 150 Ky. 176, Waddell v. Wilson, 164 Ky. 228; Coleman v. Morris, 184 Ky. 370."

On the question whether any negligence on the part of the defendant was shown, it is insisted for the plaintiff that there was sufficient evidence to take the case to the jury on these grounds: (1) The defendant's failure to inspect the transformer on the pole at the freight depot after it knew of the injury to the transformer on the pole at the Utopia Hotel 75 yards away, (2) its failure to use a lightning arrester on the pole at the freight depot, and (3) its failure to use the device of grounding the secondary wire at Topmiller's office.

On the first ground the court expresses no opinion. There is no direct expert testimony that the injury to the transformer at the Utopia Hotel should lead prudent persons engaged in the business to apprehend injury to the other transformer. But there is positive expert testimony that a transformer on the pole would protect from the danger, and that a ground wire would also have been a protection.

The defendant had these lightning arresters at about one-third of its poles in Bowling Green, but it did not have them on every pole, and there is expert testimony to the effect that they should have been on every pole on which there was a transformer and that such an arrester was a protection to the patrons. It was also shown that a ground wire at Topmiller's office would also serve as a protection.

Under the evidence the court did not err in submitting the case to the jury on the last two grounds. The court does not now pass finally on the first ground, for the reason that on another trial the evidence may be different.

The defendant is required to exercise the very highest degree of care and skill in the installation, construction and operation of its plants when handling currents of electricity of 2,200 volts, and to that end should provide itself with the known necessary devices to control its electrical current and prevent the passing of dangerous currents of electricity into the houses of its patrons. Smith's Admr. v. Middlesboro Electric Co., 164 Ky. 46; Louisville Gas Company v. Beaucond, 188 Ky. 725.

In these cases it is held that it was the duty of the defendant to so adjust its wires as to reduce the danger of contact with the wires to the smallest degree practicable, if there was such a devise known and in common use. There was expert testimony to the effect that the lightning arrester and the ground wire were devices well known and in common use, and we cannot say that there was not some evidence of the want of proper care when neither of these precautions was taken to protect the customer from the high voltage used on the primary wires.

It is insisted that the defendant could not use the ground wire by reason of the ordinance of the city, which is in these words:

"For the diminution of electrolytic corrosion of underground metal work *ground return wires* must be so arranged that the difference of potential between the grounded dynamo terminal and any point on the *return circuit* will not exceed 25 volts.

This ordinance does not apply to a ground wire simply running into the ground and anchored to a piece of metal. It applies only to ground return wires by which the current is returned to the power plant.

As the case must be reversed for other reasons, and the evidence on another trial may be different, the court does not now pass on the question whether the verdict is palpably against the evidence.

Instruction three is the usual general instruction on contributory negligence. Instruction four, which was asked by the defendant, is a specific instruction on contributory negligence. The two instructions will not be given on another trial, as the two instructions on the same subject may serve to confuse the jury. A specific instruction may be given in lieu of the third instruction if the defendant asks it, but in either case the court will add to the instruction these words, "Ordinary care, within the meaning of this instruction, is such care as a

person of ordinary prudence may usually be expected to exercise under like circumstances. Negligence is the absence of such care."

Instruction four should use the word "negligently" in the sentence referring to his standing in the water, and should read, "and that he negligently stood," and in the closing sentence of the instruction for the words "these acts, or any of them on his part, if any such proximately contributed to his death," these words will be substituted, "but for such negligence on his part he would not have been injured."

On another trial instructions five and six will be combined in one instruction, and we do not see any necessity for instruction seven. In these cases when the instructions are too numerous they serve rather to confuse than to intelligently present the case to the jury.

Under the cases of Lewis v. Bowling Green Gas Light Co., 135 Ky. 611, and Louisville Gas Co. v. Beaucond, 188 Ky. 725, the question of contributory negligence was properly submitted to the jury. The facts were not undisputed. The inferences which may be drawn from the undisputed facts are such that ordinarily intelligent men may reasonably differ upon them.

The other matters complained of will probably not occur on another trial.

Judgment reversed and cause remanded for a new trial.