No. 8811.

PEARCE v. MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY.

1. APPEAL AND ERROR—*Record—Indefinite and Unintelligible Testimony, Censured.* Action for negligence in the installation and conduct of electric fixtures. Witnesses were permitted to refer to a diagram drawn upon a blackboard, and to testify that

"from here to there," etc., without any identification of the points referred to. The court complained of the unnecessary labor cast upon it by this crude and shiftless manner of conducting matters in the court below.

2. *Presumptions.* The plaintiff having been non-suited, the court of review, on error brought, assumes the truth of the evidence produced on his behalf.

3. EVIDENCE—*Presumptions.* A corporation operating appliances for the conduct and employment of electricity is presumed to have special knowledge and skill, which it is its duty to exercise for the protection of its patrons.

4. ELECTRICITY—*Duty of Those Conducting and Using.* A telephone company is bound to know that its wires may become charged with a dangerous current, induced by lightning, and it is under a duty to use reasonable care to guard against possible fire, resulting from such excessive current.

If after the installation of its instruments in a patrons' premises, a change in the condition of such premises occurs, and such change is known to the company, or might be known by the exercise of reasonable diligence, it is under duty to use reasonable care to effect any improvement in its appliances, necessary to the safety of the premises from any danger occasioned by the change.

5. ACT OF GOD—*Negligence.* A telephone company which fails to exercise reasonable care to protect its patrons from injury by an excessive current upon its wires, induced by lightning, will not be heard to excuse its neglect as resulting from the act of God.

6. TRIAL—*Questions for the Jury.* Action against a telephone company for the destruction of a patron's property, attributed to negligence in the installation of its system in the patron's premises. Whether defendant was guilty of negligence in not adopting the most approved method of construction and maintenance, and whether such negligence was an efficient cause of the injury, are questions for the jury.

So whether the company knew, or by reasonable diligence would have known, of a change in conditions in the premises, and had reasonable time to effect any improvements or addition, made necessary by reason of such change.

*Error to Jefferson District Court, Hon. H. S. Class, Judge.*

Messrs. McCALL & McCALL, for plaintiff in error.

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. WILLIAM H. FERGUSON, Mr. ELMER L. BROCK, Mr. FLOYD F. WALPOLE, for defendant in error.

Garrigues, J.

This action is to recover damages occasioned by fire, alleged to have been caused by the negligent installation and maintenance of a telephone and appliances in plaintiff's store building. The point involved relates to the alleged error of the court in sustaining defendant's motion for a nonsuit at the close of plaintiff's evidence.

The complaint alleges that plaintiff's building and stock of merchandise burned May 13, 1913; that at that time and long prior thereto, defendant owned, operated, managed and controlled a telephone line, extending from its exchange at Arvada, into plaintiff's building, where it installed, owned, controlled and operated a telephone instrument, and maintained a public pay station at Leyden Junction; that the fire was caused by atmospheric electricity, induced by lightning conducted over the telephone wires into the building; that the company was negligent in installing, equipping, operating and maintaining the telephone and appliances in the building, and in failing to install and use well known and approved appliances and equipment, to protect the building from excess currents of electricity induced by lightning.

At the close of plaintiff's evidence, defendant introduced a motion for a nonsuit upon the ground that plaintiff had failed to sustain the allegations of the complaint, and had not established any negligence on the part of defendant; that he had failed to connect the destruction of the building with any act of negligence, or omission of defendant, and that the testimony disclosed the fire was the result of an act of God.

The court sustained the motion, took the case from the jury and entered a judgment of nonsuit. Plaintiff brings the case here on error.

The evidence shows that a well known and approved protector or lightning arrester was installed, and in use in the building, and this point will not be further considered. The

other acts of negligence relate to faulty installation, equipment and maintenance.

The witnesses used a blackboard for illustration, and in describing the situation would say, "From here to there," or, "From this point to that point," etc., which has thrown upon us a great amount of labor in comprehending the testimony. If counsel had used a diagram for purposes of illustration and made it a part of the record for our use here, it would have saved us a great amount of trouble in understanding the evidence.

We have read and studied not only the abstract, but the entire bill of exceptions, with unusual care. There is evidence showing the public highway or road at Leyden Junction, where the fire occurred, runs north and south; that originally there was a farm house facing east, which stood a few feet from the road; that there was installed in this residence in 1904, a telephone, the line of which came from the south, passing the house in the public highway, and going north; about 100 feet from the house, and a little to the south, there was a telephone pole; that the telephone wires serving the phone, came from the Arvada exchange, and ended at this pole; that about two feet above these wires there was another set of wires going on to the north; that the drop wires extended from the pole in the road, to the south side of the building, at which point they were connected with the service wires which entered the residence, and here was a ground wire. In 1896 a store room was built onto the rear or west end of the residence, where plaintiff conducted a country store, at the time of the fire, and in 1908, the phone instrument was moved by defendant from the residence, and installed in the rear or west end of the store building. In making this change, the drop wires were carried from the pole to the southwest corner of the store building, at a point under the eaves, where were placed two porcelain knobs, from which point two service wires extended down the west side or end of the store building, on the outside, to a point about 8 feet

above the ground, and 8 or 9 feet from the south side of the building, where there were two porcelain knobs. The west wall, being the back end of the store, was composed of drop siding, and here a hole was bored or cut into the store building, through which the service wires were passed and connected with an arrester, which was attached to the west wall on the inside, immediately over the phone instrument. From the arrester, a ground wire of the same size as the service wire, extended through the hole in the wall up to the connection under the eaves, at the southwest corner of the store, where it was attached to the old ground wire in use when the phone was in the residence. These three wires, that is, the two service wires and the ground wire, were passed through the same hole in the west wall, twisted together, and tacked to the wall without insulation. They were all of the same size, smaller than the drop wires and none of them were incased in nonconducting tubes. The ground wire, instead of taking the shortest course to the ground, passed through the hole in the wall, thence along the outside of the building to the point where the service wires were connected with the drop wires, and there hooked up with the old ground wire. After this, and sometimes prior to 1913, exactly when the evidence does not disclose, plaintiff built a butcher shop onto the west end of the store room, which changed the west or rear wall along which the wires were tacked, from an outside, to a partition wall between the butcher shop and store, so that the phone and arrester were no longer on an outside wall. The evidence does not show that during the building of the butcher shop, or afterwards, that any change whatever was made in the location of the phone, arrester, or any of the appliances. The shop was simply built onto the back end of the store, and the installation was left as it was. The three wires now passed through a hole under the eaves at the southwest corner of the store building. Who made the hole, or put the wires through, the evidence does not disclose, but it was explained in oral argument here, that the workmen

simply built around the wires and left them as they were.

On the night of May 13, 1913, about 11:30, a thunder storm passed over the locality which was no unusual occurrence, and not of extraordinary severity. During this storm a flash of lightning either struck the wires going north, immediately above the phone wires at the pole, or came to the ground in the immediate vicinity, or both. About a quarter of an hour later, plaintiff discovered the butcher shop was on fire where the wires were tacked against the wooden wall, and at the hole under the eaves where they entered the building.

Plaintiff claims the phone was negligently installed in the store in 1908, and so remained until the fire; that the service and ground wires where they passed through and were tacked against the wall, should have been incased in non-conducting tubes; that the ground wire was too small and should have been as large as the two service wires combined in order to carry away any current they brought in, and should have taken the shortest course to the ground; that the arrester, after the building of the butcher shop, should have been moved to an outside wall; that the stroke of lightning induced an excessive current of electricity which was conveyed over the service wires into the house and set fire to the building.

The defense contends that the house was struck directly by lightning, and set on fire; that if the bolt struck the wires, and entered the house, it was of such force that no installation could have prevented the destruction; that if an excess current on the wires was induced by lightning, it was an act of God for which defendant was not responsible; that the phone was properly installed in 1908, without negligence; that plaintiff changed the conditions by building the butcher shop, for which defendant was not responsible, and that it had no knowledge of the changed conditions.

It must not be understood that we find any fact has been established or settled. A nonsuit having been sustained, at the close of plaintiff's evidence, we simply assume, for the purpose of the review, that plaintiff's evidence is true.

Garrigues, J., (after stating the case as above).

1.  There was evidence that an excess current of electricity, induced by lightning, was conveyed over the telephone wires into plaintiff's building, setting it on fire. Defendant was bound to know that its wires might become charged with a dangerous current induced by lightning, which made it the duty of the company to use reasonable precaution to guard against fire. Because such excess current was produced by lightning makes no difference in defendant's liability, if it could have avoided the injury by exercising ordinary care and diligence. From the business in which defendant is engaged, it is presumed to possess special knowledge and skill in such matters, not possessed by laymen, which it was its duty to use for the protection of its patrons, no matter whether the current was generated by it or produced by lightning. It was as much its duty to be diligent in affording protection against a current likely to come over the wires not generated by it, as a current it generated, and it could not escape this responsibility by pleading that the excess current was induced by lightning. No one was responsible for the lightning; but if defendant's faulty installation or management of the phone and its appliances was responsible for the excess current coming over the wires, entering the building and doing the damage, or if by the use of ordinary and reasonable care, precaution and diligence, it could have avoided the injury, it is responsible.

If two efficient causes united in producing the injury and the company brought about one of them, it would be responsible. In other words, if lightning and defendant's negligence concurred as the efficient cause of the fire, defendant would be liable. For plaintiff to recover, the jury would only have to find that the negligence of defendant was an efficient cause, without which the injury would not have happened. We are therefore of the opinion it was defendant's duty to use such proper and ordinary care, in the installation and maintenance of the phone and appli-

ances as would afford protection against injury likely to
occur from an excess current from any source, reasonably
to be expected.

2. Applying the rules of law above announced, to the
evidence showing: That the phone wires were charged
with an excess current of electricity, induced by lightning
conducted over the wires into the building, setting it on
fire, that the wires where they passed through and were
tacked against the wooden partition, should have been in-
cased in non-conducting tubes; that the ground wire should
have taken the shortest course to the ground, and was too
small; that after the butcher shop was built, the arrester
should have been removed from the inner wall to an outer
one; that the excess current could have been safely con-
veyed to the earth, if proper appliances had been used;
that there were in common use, well known, approved and
efficient non-conductive tubes, electrical protective devices,
and appliances, for safeguarding property from injury from
lightning passing over telephone wires to buildings in which
such wires enter, and that here, the installation was de-
fective, improper and dangerous; the origin of the fire was
a question that should have been submitted to the jury.

Whether defendant adopted the most approved method
of construction and maintenance to guard against such a
casualty, or whether it was guilty of negligence in this re-
gard, or whether by reasonable precaution it could have
prevented the injury, or whether its negligence was an
efficient cause were questions of fact. It is no defense
that an excess current induced by lightning came over the
wires, if the negligence of defendant in not properly in-
stalling and maintaining the phone and appliances was an
efficient cause of the injury, and without which it would not
have happened. Whether or not defendant installed and
maintained the phone with the usual and ordinary appli-
ances for conducting an excess current likely to occur,
caused by lightning, to the earth, and whether had it done
so, no injury would have occurred, were questions of fact
that should have been submitted to the jury.

3. As to the changed conditions caused by plaintiff building the butcher shop, if the company had no knowledge of the change, and it was the cause of the injury, defendant would not be liable. But if the building of the addition made the location of the arrester improper and dangerous, and defendant knew, or by the exercise of reasonable care would have known of the changed conditions, it was its duty to make a proper installation after the change. If it knew the location of the arrester had been so changed by the addition of the butcher shop, that the building was in danger of fire from an excess current, caused by lightning coming in over the wires, it was its duty to move the arrester to an outside wall, if that was necessary, no matter if plaintiff brought about the change. There was evidence from which the jury could have found that defendant knew of the changed conditions and had reasonable time within which to move the arrester. All of these matters, including the changed location of the arrester and whether defendant had knowledge thereof and had reasonable time within which to move it from an inside to an outer wall after the butcher shop was constructed, should have been submitted to the jury.

Judgment reversed and cause remanded.

*Reversed and Remanded.*

Chief Justice Hill and Mr. Justice Scott concur.