## Watson v. Pullman Company.

(Decided March 3, 1931.)

WOODS, STEWART, NICKELL & SMOOT for appellant.

BROWNING & REED for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

The appellant, Mrs. Katherine Watson, with her 15 months old child, on February 16, 1927, was a passenger on a car of the appellee, the Pullman Company, en route from Denver, Colo., to Ashland, Ky. After the train left Kansas City, she went into the dining car immediately ahead for breakfast. She tarried there for perhaps an hour or more. In returning to the sleeping car and while carrying her baby, she testified, she stumbled over the step box of the Pullman car, which was in the center of the aisle of the vestibule next to the dining car and which she did not see. She stated that the box was not in the way as she passed through going to the diner. After she fell she pushed the box to one side against the wall in order to have support for her back and sat down upon it. A little later she was found there by the brakeman on the train whom she told of her fall, and he assisted her into her berth. Mrs. Watkins suffered serious injuries by reason of the fall. Upon the arrival of the train at St. Louis, that afternoon, she was examined by a phy-

sician, and after reaching her home at Ashland was placed under the care of a doctor. There is no contention that the appellant was not injured, although the extent of her injuries is minimized by the company.

The step box was a metal movable box about eight inches high used to assist passengers on and off the car. It was heavy and had rubber footings to prevent slipping, and was the standard box in use as a part of the equipment of Pullman cars. The Pullman porter testified that upon leaving Kansas City he usually placed the box on the left side of the vestibule against the door and he did so on that morning. He had passed through the vestibule going to and returning from the diner and the step box was not in the passage way. As he returned he remembered that he and the steward had opened the doors for Mrs. Watson as she was entering the diner. The next time he had occasion to use the box was early in the afternoon and he found it at the place where he had put it. The conductor of the train stated as being his best judgment that he had passed through the vestibule to the rear car twice between Kansas City and Pleasant Hill, about where the train was when the appellant claims to have fallen over the box, and that it was not in the aisle of the vestibule.

At the close of all evidence the court directed a verdict for the defendant, and the plaintiff appeals.

It will be observed that there was no direct or affirmative evidence of negligence on the part of the company's employees. We have the simple statement that a part of its car equipment was in the aisle of the vestibule, where it ought not to have been and where the plaintiff had no reason to expect to find such an obstruction. The case turns upon whether or not application should be made of the rule of res ipsa loquitur, which is often a difficult question. In Paducah Traction Co. v. Baker, 130 Ky. 360, 113 S. W. 449, 18 L. R. A. (N.S.) 1185, the doctrine is treated with elaboration and different conditions are noted where it was applied. There are many other opinions of this court relating to the subject. It is generally and broadly said that the rule is brought into play where the instrumentality which caused the injuries is shown to be under the control or management of the defendant or its servants and the accident was such as in the ordinary course of things it would not have happened if those who have the management use proper care. It

affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care. Res ipsa loquitur—the thing speaks for itself—is but a terse way of declaring that the circumstances attending an accident are of themselves of such character as to justify an inference of negligence on the part of the one having control over those circumstances. Wright v. Elkhorn Consolidated Coal & Coke Co., 182 Ky. 423, 206 S. W. 634.

The appellee relies upon Hawkins v. Louisville & N. R. Co., 180 Ky. 295, 202 S. W. 632, 3 A. L. R. 637, in which a Pullman passenger had fallen over a heavy cuspidor in the doorway of the smoking compartment and concealed by curtains. It was held that the carrier was not liable because there was nothing to show by whom or when the cuspidor was placed in the doorway. In the annotations in the American Law Reports, the question is raised whether or not an opportunity should not have been given to the jury to pass upon the question of the carrier's negligence; and numerous cases more or less similar to that effect are given in those annotations.

On the other hand, the appellant relies upon Jenkins v. Louisville & N. R. Co., 104 Ky. 673, 47 S. W. 761, 762, 20 Ky. Law Rep. 865, where a passenger was injured by the falling of a partition between the berths of a Pullman car. While sitting in his berth reading, this partition plank or headboard suddenly fell and struck him on the head. The defendant showed that these headboards were so constructed and fitted in place as to make it a physical impossibility for one to fall after it had been once properly put in and fastened, and it was the uncontradicted testimony of the porter that it was properly placed and securely fastened. Says the opinion:

> "There is no testimony that appellant unfastened locks, or in any way tampered with the headboard; and, when this is coupled with the testimony that the board did in some way get out of its proper place, to appellant's injury, a presumption arises, in the absence of other satisfactory proof, of negligence on the part of appellees, for which they are liable. See Louisville & Portland R. R. Company v. Smith, 2 Duv. 556; Cooley, Torts, p. 663; Ray. Neg. Imp. Duties (Pass. Carr.) p. 681; Railroad Co. v. Walrath, 38 Ohio St. 461 [43 Am. Rep. 433]; and White v. Boston Railway Co., 144 Mass. 404, 11

N. E. 552. The rule has often been announced by this court that it is the province of the jury to determine the weight of evidence and the credibility of the witnesses and that where the evidence conduces in any degree to establish a right of recovery it is error to give a peremptory instruction to find for defendant.''

The two cases are clearly distinguishable. A cuspidor, though a part of the equipment of the Pullman car, is for the use of the passengers, who may move it about for their convenience, and liability of the carrier in respect to it is the same as that pertaining to baggage. But this step box is altogether under the control of and is used only by the employees of the company. It is of the same character of equipment as the headboard which caused the accident in the Jenkins case.

This case is not unlike that of Pullman Co. v. Waln (C. C. A.) 4 F. (2d) 1, 3, 41 A. L. R. 1393, where it was held that the failure of the Pullman Company to perform a duty with respect to platform doors renders it liable for injuries caused thereby. In that case, while a husband and wife were returning from the dining car into the sleeper, the wife fell through the open doors while the train was passing through a tunnel. It is there said:

"The case was not one where the happening of the accident was invoked to show negligence, but the open door and trap were the proven facts which caused the accident. This door and trap could not have been open if those charged with their oversight did their duty, for by the rules we think the Pullman Company was given the same control and oversight of the vestibule as over the inner body of the car. That the door was left open and caused the accident were facts from which a jury could infer there was a lack of care on the part of the Pullman Company in performing its part of a common joint duty to the traveler in which it had united with the railroad and for which it had been paid by such traveler.''

In Lindsey v. Atlantic Coast Line Railroad Co., 173 N. C. 390, 92 S. E. 166, a passenger was caused to fall by stepping upon a large bolt in the aisle of a car. It was held that he made out a prima facie case for damages by showing the presence of the bolt on the floor

on which he stepped and which caused him to fall, thus placing the burden upon the carrier to exculpate itself.

Applying these authorities, the court is of the opinion that the trial court erred in directing a verdict for the defendant and should have submitted the case to the jury under proper instructions. The jury may not have accepted the porter's testimony as conclusively proving the absence of negligence.

Judgment reversed.