## Dunning v. Kentucky Utilities Co.
## Dunning's Administrator v. Same.
(Decided Oct. 5, 1937.)

46

FREDERICK OLSZEWSKI for appellants.

GORDON, LAURENT, OGDEN & GALPHIN and ELDRED & ELDRED for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

While riding on a corn planter in a field near Princeton in the early afternoon of May 14, 1934, Gaston Dunning was struck by lightning and killed. The mules he was driving were also killed. Traversing the field was a highly charged electric transmission line owned and operated by the Kentucky Utilities Company. The suits of Dunning's administrator and of his father, the owner of the mules, for resulting damages against the company, were tried together. The court overruled the motion of the defendant for a peremptory instruction at the close of the plaintiff's evidence, but, after its introduction of several witnesses, he gave such instruction. The consolidated appeals have followed.

The line ran in a general east and west direction. It was carried on steel towers 60 to 70 feet high. Dunning was killed at a point 297 feet southwest of one of these towers and 165 feet south of the line, which was about 40 feet above the ground. The evidence of plaintiffs in its most favorable aspect is that during a severe electrical storm lightning struck the power line about a half mile west of the field and that a "blue looking ball of fire," "larger than a washing tub," followed the wire easterly to a substation located about 1,400 feet away, where it was grounded after knocking some insulators off, slightly damaging the station, and setting fire to the grass around it. A witness who was about 600 feet away testified:

> "There was a stroke of lightning. I heard a terrible crash, somewhere, some place west of where Gaston Dunning was, just where I could not tell. I was sitting on the front porch, looking straight ahead where he was working with a team of mules and the drill and very suddenly after the lightning crashed the wires were aflame, sparkling bluish flame in all directions and I saw electricity jump off the wires and at that time Gaston was going away from the line but I saw a flash of electricity from the wire strike Gaston Dunning and he fell backward and the same flash knocked the mules and they fell too."

Some of her answers were to the effect that the bolt

of lightning struck the wire and the man simultaneously. Two witnesses, one 300 feet from the point of the accident and the other farther away, testified to having received slight shocks at the time. The corn planter was of metal, and animals, especially when sweaty or wet, are good attractions for static electricity. Thus the evidence is that a bolt of lightning, after passing by at least six steel towers supporting the wire, left it, reached out and down 170 feet and struck the man and his team. Other testimony presented by the plaintiffs was not quite so effective. The witness who testified to seeing the lightning strike the wire a half mile away related that at one of the steel towers (the location of which is indefinitely put as "in the Cartwright field") he observed afterward that a concrete base in which one of the tower legs was imbedded was broken or cracked. There was no evidence offered to establish any defect in the defendant's equipment or any failure to use generally approved appliances or devices for minimizing the effects of lightning.

The evidence introduced by the defendant is that the line carried 66,000 volts and that such voltage will make an arc of only 3.3 inches. That is to say, if another conductor is brought within 3.3 inches of a line carrying 66,000 volts, the current will jump to it; that the towers were sunk 8 to 9 feet in the earth and were otherwise grounded by wire; that the wires were insulated from the towers 2½ feet; and that a voltage many times that carried on the line would have to get on it before the current could reach the tower. The substation was equipped with standard and approved lightning arresters, and at each end of the power line there was an automatic circuit breaker, so that, if lightning got by the arresters, the circuit breaker would automatically trip out and stop the entire flow of current. No other equipment known to science could have been used to prevent lightning from doing damage. It was proven that the line and equipment were in good condition, as had been established by inspection and tests, and that no part of it had been affected or injured by the lightning on this occasion. It is an elementary fact that electricity seeks the ground at its nearest point, which would have been 39 feet immediately below the wire instead of 165 feet away where Dunning was at work.

The plaintiffs relied upon the doctrine of res ipsa

loquitur. They yet contend that the facts disclosed established a prima facie case which cast the burden upon the defendant to negative negligence by showing that it had exercised the utmost care and that the evidence taken together made a case for the jury.

In Black Mountain Corporation v. Partin's Adm'r, 243 Ky. 791, 49 S. W. (2d) 1014, 1017, the doctrine of res ipsa loquitur was examined with care and attention directed to some confusion in the expressions of the courts in defining it. Our definite conclusion was stated to be that the correct consideration or application for the rule—quoting from Watson v. Pullman Co., 238 Ky. 491, 38 S. W. (2d) 430—is that:

> "Res ipsa loquitur—the thing speaks for itself—is but a terse way of declaring that the circumstances attending an accident are of themselves of such character as to justify an inference of negligence on the part of the one having control over those circumstances."

And, proceeding to finality, "if one charged with negligence 'goes forward' with his testimony and establishes the exercise of the proper care on his part, and thereby completely overcomes the inference to be drawn by the jury from the testimony produced by the plaintiff, then the 'inference' of negligence is wiped out and destroyed, and defendant is entitled to a directed verdict." This is not to hold that the burden of proof in the sense of ultimately proving or establishing the issue or case of the party upon whom such burden rests has shifted. That never shifts. It is to recognize that the duty or burden of proceeding or going forward is caused to shift, and, if the defendant does not pick up the burden, he may suffer the loss of his case by the inference to be drawn from the plaintiff's evidence. In turn, having put facts and circumstances into the scale against the presumption upon which the plaintiff has relied, the duty to go forward may shift back to the plaintiff if the evidence calls for or permits explanation or rebuttal. Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; Page v. Camp Mfg. Co., 180 N. C. 330, 104 S. E. 667. However, as is further stated in Black Mountain Corporation v. Partin's Adm'r, supra, following the expression that the inference of negligence established by the plaintiffs' evidence is destroyed by the defendant's presentation of facts, in order for

that rule of practice to apply, such evidence must be undisputed and uncontradicted by testimony or circumstances.

There can be no dispute that in dealing with so dangerous an agency as electricity nothing short of observing the highest or utmost degree of care to protect from harm those to whom a duty is owing will meet the demands of the law. Mangan's Adm'r v. Louisville Electric Light Co., 122 Ky. 476, 91 S. W. 703, 29 Ky. Law Rep. 38, 5 L. R. A. (N. S.) 459; Lewis' Adm'r v. Bowling Green Gaslight Co., 135 Ky. 611, 117 S. W. 278, 22 L. R. A. (N. S.) 1169; Paducah Light & Power Co. v. Parkman's Adm'r, 156 Ky. 197, 160 S. W. 931, 52 L. R. A. (N. S.) 586; Smith's Adm'x v| Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164; Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179; Kentucky Utilities Co. v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. (2d) 283, 57 A. L. R. 1054. This duty perhaps rises to its highest degree in relation to a high-tension transmission wire, which is one of the most dangerous things known to man. Note to City of Henderson v. Ashby, 179 Ky. 507, 200 S. W. 931, 14 A. L. R. 1018; Kentucky & West Virginia Power Co. v. Riley's Adm'r, 233 Ky. 224, 25 S. W. (2d) 366. In the particular connection, the mere failure to confine electricity within the appointed channels may be negligence, and, if injury is directly traceable to such failure, it is not material that independent agencies intervened. Paducah Light & Power Co. v. Parkman's Adm'r, supra; 9 R. C. L., 1216; annotations, 14 A. L. R. 1023. It will not do to say, as does appellee, that the presence of the power line had nothing to do with creating atmospheric conditions which produce lightning or that the lightning was the proximate cause. If, as a matter of fact, this line carried the lightning a half mile, and then, because of some defect or omission of duty in relation to its construction or maintenance, as by providing inadequate grounding to prevent it, the mass of electricity was carried along and deflected to the decedent, there would be a responsibility and the defendant would not be heard to say that, if there had been no lightning, there would have been no damage. Speaking broadly, there can be no liability for an act of God, but, if an accident is due to the combined effects of a person's negligence and an act of God, the injury is considered the proximate result of the negligence and recovery can be had. Evans v.

Eastern Kentucky T. & T. Co., 124 Ky. 620, 99 S. W. 936, 30 Ky. Law Rep. 833; Cohen & Stryck v. Home Tel. Co., 179 Ky. 107, 200 S. W. 344; Kentucky & West Virginia Power Co. v. Riley's Adm'r, supra.

For the purpose of this decision, and for that purpose only, we may accede to the appellants' proposition that their cases did not rest upon evidence palpably contrary to possibilities or the laws of nature, or upon mere conjecture of liability, and that, having established the facts in relation to the death of the man and the loss of the animals, the duty of overcoming the inference of responsibility was placed upon the defendant.

The defendant was bound to make provision for the laws of nature of which one of ordinary prudence engaged in a like enterprise would be required to take notice. Although sounding different in statement, that is to say, in the circumstances the duty devolved upon the defendant to use the highest degree of care practicable to provide protection against the acts of nature. The phenomenon of lightning and its unaccountable action could not be ignored. It was the defendant's duty to minimize such danger as might reasonably be expected from lightning acting through the medium of its instrumentalities by using equipment and safeguards proper and commensurate with the danger. If, as proved, the defendant exercised such care in locating its line, employed such devices and appliances as are best known to science to achieve that end, and maintained the equipment in proper condition, it performed its duty. To impose more would be to place the responsibility of an insurer against such an extraordinary act of lightning as was related by the plaintiffs' witnesses. Evans v. Kentucky Tel. Co., supra; Brucker v. Gainesboro Tel. Co., 125 Ky. 92, 100 S. W. 240, 30 Ky. Law Rep. 1162; Rural Home Tel. Co. v. Arnold (Ky.) 119 S. W. 811; Kentucky Public Service Co. v. Topmiller, 204 Ky. 196, 263 S. W. 706, 707; Kentucky Utilities Co. v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. (2d) 283, 57 A. L. R. 1054; Moran's Adm'x v. Kentucky Power Co., 228 Ky. 329, 14 S. W. (2d) 1087; Jeffress v. Virginia Ry. & Power Co., 127 Va. 694, 104 S. E. 393; Pearce v. Mountain States Tel. Co., 65 Colo. 91, 173 P. 871, L. R. A. 1918F, 1102; 20 C. J. 344; 9 R. C. L. 1217.

As stated, the court interrupted the trial by saying he had heard evidence sufficient to prove the defendant was not guilty of negligence. The plaintiffs were en-

titled to offer evidence to prove that reasonably adequate protection against danger to men and animals in the field had not been made or maintained. For, as we have indicated, the burden of again "going forward" had shifted to the plaintiffs. But they indicated no desire to introduce rebuttal evidence. Hence the case must be decided upon the record as it was then before the trial court and is now before us.

The facts as proven not being disputed, we think all reasonable minds agree that the defendant was not negligent; hence that the court properly directed a verdict for it.

Judgment affirmed.