## Kentucky & West Virginia Power Co. v. Elliott.

May 3, 1949.
Rehearing denied June 24, 1949.

Hobson & Scott for appellant.
Edward L. Allen for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Affirming.

Appellee brought this action against appellant to recover $2700 for loss of his household goods and clothing destroyed by a fire in September 1945 which burned the house he rented. The petition averred that the fire was caused by the negligence of the Company in the construction and maintenance of the electric wire which ran along an outside wall of the house to the meter. The verdict was for $1,500 and to reverse the judgment entered thereon the Company insists: 1. it was entitled to a directed verdict; and 2. the instructions were erroneous.

Appellee was not at home when the fire occurred and as his wife and two grown daughters have died

since the house was burned, he relied solely upon the testimony of his eighteen year old daughter, Cynthia, to establish the negligence of the Company. On June 1, 1941, the Company installed its service wire running across the front of the wall near the eaves of the house three or four feet to the meter. The girl and her father both testified that this wire leading to the meter had worn and the insulation on it along the wall of the house had become frayed and ragged. The wire had been in that condition several months before the fire and as an employee of the Company came to read the meter every month, he must have known of the condition of the wire.

This was a box-house with an asphalt or tar-paper roof. It was constructed of poplar lumber taken from an old razed building. The fire occurred about 2:15 P. M., and the structure was destroyed completely within fifteen or twenty minutes. Cynthia testified she saw the wire blazing on the side of the building, ran into the house and got a blanket, wet it in a barrel of water on the porch and threw the blanket on the blazing wire. The wet blanket did not put out the fire and she ran back into the house and got a quilt to wet with which to smother the blaze; by that time the fire was going up the corner of the house and she could not reach it.

The Company attempted to weaken Cynthia's testimony in proving by some workmen who immediately came to the scene when the fire first started that there were some bedclothes on the porch and it would not have been necessary for the girl to run in the house for them in her efforts to smother the blaze when she first discovered it. Some of these witnesses testified that the roof of the house burned first and the walls were the last of the building to be destroyed. Also, an effort was made through a neighbor, Mrs. Horn, to prove Cynthia's mother had told her that she and not her daughter had first discovered the fire and it was not on the side of the house but in the ceiling. However, Mrs. Horn could not recall exactly what the mother had said to her, except that when she first saw the fire it was coming through the ceiling. These witnesses did not contradict Cynthia in a material way and her testimony remained unshaken—at least, it was of sufficient strength to take the case to the jury and to support the verdict.

The testimony for the Company given by F. M. Baker, its General Manager and a graduate electrical engineer from the Massachusetts Institute of Technology, is that the Company's wire which ran along the side of the house a few feet to the meter would not burn; that if a short occurred in it, the three ampere fuse in the transformer 306 feet from this house would blow out. He demonstrated before the jury that it took a blow-torch to set on fire a wire said to be identical with the one which ran along the wall of the house; that the flame did not reach a height of over six inches and went out of its own accord in less than five minutes. Baker next stripped the rubber insulation off the wire, attached a bulb to it which lighted. Then with the bulb lit, he put a piece of paper on the wire and the paper did not burn. Baker testified that the wire was wrapped concentrically with small wires so that it was perfectly insulated even though the outside rubber covering was removed.

Several other officers and employees of the Company corroborated Baker's testimony that the outside rubber insulation on this wire would not burn and that the live wire in the middle of the cable was so protected by the concentrically wrapped small wires that the building could not be set on fire from the live wire inside the cable. They further corroborated Baker by saying that if a short occurred in this live wire, it would blow the three ampere fuse in the nearby transformer.

There is a direct conflict in the evidence. Cynthia testified that she saw this wire blazing; that she failed to extinguish it with a wet blanket and that it set the house on fire. The testimony for the Company is that in an experiment performed before the jury it was demonstrated that a wire said to be identical with the one on the house would not burn, and in case of a short circuit the fuse in the nearby transformer would be blown. However, the testimony for the Company did not show whether or not this fuse blew out, as the Company had no record on it. It will be noted the Company's testimony did not show the experiment performed before the jury was on the same wire which had been attached to the house nor could Baker say how old the wire was. Had the author of this opinion been on the jury, he would have cast his vote to find for the Company, but

we cannot invade the province of the jury and pass upon the credibility of the witnesses.

Appellee did not base his case on a supposition or probability as to how this house caught fire. Park Circuit & Realty Co. v. Ringo's Guardian, 242 Ky. 255, 46 S. W. 2d 106. Nor did his evidence take the jury into the realm of speculation and guesswork as to how the building caught fire. Jackson Purchase Rural Electric Co-op. Corp. v. Burns, 285 Ky. 61, 146 S. W. 2d 340. His daughter testified clearly and directly that she saw the house catch fire from this burning wire. The testimony for the Company is that a wire identical with the one on appellee's house would not burn the rubber insulation within which it was encased, nor could it set fire to the house. Therefore, it was for the jury to determine whether or not they would accept the testimony of the girl or that of the learned and skilled electrical engineer, along with that of the officers and employees of the company. Cynthia's positive, direct and clear testimony was not only sufficient to take the case to the jury, but to sustain the verdict.

We cannot agree with the Company that this case falls within the rule set out in such cases as Cincinnati, N. & C. Ry. Co., v. Johnson, 281 Ky. 565, 136 S. W. 2d 769, and Lambert v. Miller's Adm'r, 277 Ky. 64, 125 S. W. 2d 1019, 1023:

"When physical situations or matters of common knowledge point so certainly to the truth as to leave no room for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn testimony which, in mere words, conflicts therewith."

In the instant case the physical facts and common knowledge do not contradict Cynthia. She was only contradicted by the electrical experts, whose testimony was no more infallible than was hers. Had Baker performed his experiment before the jury with the same wire which had been used on the house, then the Company might have been in a position to invoke the above rule.

We come now to the instructions. In the first instruction the jury were told that it was the Company's

duty to exercise the utmost care and skill "to install and construct, keep and maintain its service wires leading to the house occupied by plaintiff." The second instruction predicated liability on defendant's violation of that duty required in the first instruction in "connecting and maintaining its service wires with the house occupied by plaintiff." There was no testimony of negligent installation or construction of this service wire by the Company, hence it insists the instructions were prejudicial in referring to negligent installation and construction, citing Stanley's Instructions to Juries, sec. 19, page 31, and such cases as Hogle's Guardian v. Wolfzorn, 248 Ky. 396, 58 S. W. 2d 577; Chesapeake & O. Ry. Co. v. Caudill, 270 Ky. 107, 109 S. W. 2d 20. These authorities are to the effect that the instructions must be confined to statements of such principles of law as are applicable to the evidence received to sustain the contention of the parties.

There would be merit in the Company's contention except for the fact that the instructions required the jury to believe that the Company was negligent both in the installation of the service wire and in its maintenance before it could find for appellee. Such instructions were more favorable to the Company than those to which it was entitled, since the ones given required the jury to believe it was negligent not only in the maintenance of this wire but also in its installation, when appellee was entitled to recover if the Company negligently maintained the wire regardless of whether or not it negligently installed same. Had the instructions used the conjunction "or" instead of "and", they might have been prejudicial to the Company because then they would have permitted a recovery if it was negligent in either the installation or maintnance of the wire when there was no evidence that same was negligently installed.

For the reasons given, the judgment is affirmed.