**KENTUCKY POWER COMPANY,**
**Appellant,**

v.

**Hardy KILBOURN et al., Appellees.**

Court of Appeals of Kentucky.

June 7, 1957.

Rehearing Denied Dec. 13, 1957.

Willis W. Reeves, Hazard, Stephen Combs, Jr., Whitesburg, Smith, Reed & Leary, Frankfort, for appellant.

French Hawk, Harry M. Caudill, Whitesburg, Bert T. Combs, Combs & Combs, Prestonsburg, for appellees.

STANLEY, ·Commissioner.

The appeal is from a judgment for $23,500 for the destruction of a storehouse and residence and their contents by fire alleged to have resulted from the appellees' negligence in supplying ˙electric current of such a low voltage that it caused appliance motors to overheat and set fire to the storehouse.

The fire was discovered about one o'clock in the morning of March 5, 1955. Appellant concedes here that there was evidence that the evening before the lights in the town of Blackey were dim, and that the appellees' and other appliance motors were hot because of low voltage. But it vigorously contends the evidence that this condition caused the appellees' fire produces no more than speculation, hence was not sufficient to take the case to the jury. It is further argued that even if the evidence as to the origin of the fire was sufficient, there was no proof of appellant's negligence.

The plaintiff, Hardy Kilbourn, who was about 75 years old, and his wife were sleeping in rooms back of the store. He woke up, smelled smoke and ran to the store. Upon opening the door he testified, "The house was on fire around the meat freezer * * * it looked like the biggest part of the fire was under the meat freezer, but it was running plumb up to the loft." He couldn't see inside the meat case because of the smoke, but "I do know that down to the bottom, it burned the floor up." The motor rested on a wood floor. There is further description, but this is an epitome of it all. The heat and smoke were so intense Mr. Kilbourn could not enter the room. He and his wife escaped in their night clothes. Everything they had was burned up, including $700 or $800 in silver and $200 or $300 in paper money.

Kilbourn testified that when he went to bed between 10 and 11 o'clock that night, the lights were dim, a 75 or 100 watt lamp giving out about as much light as a 25 watt lamp; also that he had had previous trouble from his motors stopping and merely humming. The motors were relatively new and were in good condition. It had been necessary several times during a week or more preceding the fire to disconnect them because they were overheated or at least would not operate. Other citizens of the town corroborated the plaintiffs as to low voltage and that before the fire their own motors had been overheating. In particular, several witnesses testified that during the Kilbourn fire, their own lights were dim and their appliance motors were overheated to such an extent they had to disconnect them.

The appellant challenges the probative value of Kilbourn's testimony (upon which it is claimed the judgment rests) that upon a fleeting look he was able to say that the fire was under and around the meat freezer and other electric appliances, and that fire was running to the loft because it just "looked like it". It is argued that this is not positive evidence. Cross examination did not budge the witness from his first recitals, which were, as the record discloses, accompanied by manual demonstrations. Too specific or definite description of the fire and its place of origin ought not to be expected under the circumstances. Its probative worth as a positive statement was for the jury to accept or reject.

Ed Taylor, who received his technical education in a correspondence school and who had been employed for thirty years or more as an electrician for several coal mines in a wide category of electrical services was introduced as an expert by the plaintiffs. In answer to a hypothetical question which fairly embodied the substance of plaintiffs' factual evidence as above outlined, the witness expressed the opinion that low voltage of electricity had caused the fire. His opinion was accompanied by detailed explanations as to why inadequacy of current will not run the motors but will cause them to become very hot. He testified positively that the insulation will burn and cause a lot of "smoke and flame." He stated that where a fuse had burned out the motor may get "a single phase electricity and may get hot enough to set wood on fire." The defendant's objection to the opinion testimony on the ground that the witness was not a qualified expert was overruled. The claim of disqualification is pursued on the appeal, although principally as part of the

argument that the witness' opinion should not be accepted or given credence, and without credence there was no evidence that low voltage caused this fire.

Electricity and its operation under given circumstances are typical subjects of expert opinions. While it is clear that a witness in order to be competent as an expert must show himself to be skilled in the business or profession to which the subject about which he is called to testify relates, there is no precise rule as to the mode in which such skill or experience must be acquired. A witness may become qualified by practice or an acquaintance with the subject. He may possess the requisite skill by reason of actual experience or long observation. The decision as to qualification of the witness as an expert rests in the discretion of the trial court. Kentucky Public Service Co. v. Topmiller, 204 Ky. 196, 263 S.W. 706; Louisville & N. R. Co. v. Rowland's Admr., 227 Ky. 841, 14 S.W.2d 174; Commercial Union Assur. Co. v. Howard, 256 Ky. 363, 76 S.W.2d 246.

We think the weight or probative value of Taylor's testimony was for the jury to consider.

While it is true that in the main plaintiff's case as to the origin or cause of the fire rested upon the testimony of Hardy Kilbourn and Taylor's opinion, the proof cannot be discarded as merely affording speculation or as constituting only a scintilla of proof. We regard all the circumstances surrounding the fire and the technical testimony as sufficient proof that inadequate or low voltage furnished the plaintiffs as patrons of the defendant caused the fire and loss. Kentucky Utilities Company v. Young, Ky., 247 S.W.2d 978. See also Kentucky Utilities Co. v. White Star Coal Co., 244 Ky. 759, 52 S.W.2d 705; Kentucky and West Virginia Power Co. v. Kilburn, 304 Ky. 635, 637, 201 S.W.2d 896; Kentucky and West Virginia Power Co. v. Elliott, 310 Ky. 496, 220 S.W.2d 964.

It is, of course, recognized that suppliers of electric current must exercise the utmost care and skill to protect their patrons and the public against danger and harm. Kentucky Utilities Co. v. Woodrum's Admr., 224 Ky. 33, 5 S.W.2d 283, 57 A.L.R. 1054. On the question of negligence causing the low voltage the plaintiffs were not in position to establish it directly or specifically. We do know, of course, that the conditions in the plaintiffs' building before and at the time of the fire as described by the witnesses do not exist or occur where the service is normal. The facilities which produced the abnormal and dangerous condition were under the management and control of the defendant. It seems to us the evidence produced by the plaintiffs cast the burden upon the defendant to go forward and present evidence to show that it was free from negligence. Dunning v. Kentucky Utilities Co., 270 Ky. 44, 109 S.W.2d 6. But in anticipation of the defense the plaintiffs proved in their direct presentation of the case that on the night of the fire there had been no storm or lightning in and around the community or the defendant's Woodrock substation through which their current passed.

Since the verdict was for the plaintiff on instructions submitting the issue of negligence and proximate cause, it seems sufficient merely to outline the defendant's evidence. The company's transmission system, including facilities for protection against lightning and other interferences, met the high standards required and was as efficient and safe as the great degree of care and legal duty demanded. The company proved that there had been a storm during the night of the fire, and that lightning had damaged a transformer which resulted in low voltage in the Blackey community. A 33,000 volt circuit breaker on the line which served Blackey cut out at 12:32 a. m. This indicated a grounding of current. Four minutes thereafter the circuit was closed manually. It again cut off at 1:14 a. m. and was again closed. The same occurred twice again during the night.

These occurrences were attributed to heavy lightning or a severe storm. The effect was to cut off or interrupt the service entirely and not merely diminish the energy. There was no damage to the line or equipment except that two fuses had blown out in the Woodrock substation, and perhaps some damage to the transformer which is near Blackey.

■ The claim of exoneration from liability because of this vis major, namely, lightning, interfering with the normal condition of the facilities and flow of current through the substation, we might observe, was refuted by evidence that the low voltage of current going into Blackey had existed before the storm even though the energy may have been further diminished by lightning interference. It is familiar law that if an accident is due to the combined effects of an act of God and human negligence, the injury is considered the proximate result of the negligence. Dunning v. Kentucky Utilities Company, 270 Ky. 44, 109 S.W.2d 6.

The defendant proved by two thoroughly trained and experienced electrical engineers that an electric motor may smoke and smoulder but not blaze because it is made of flame-resistant material. The substance and effect of the testimony of these witnesses is that there was no negligence on its part, and that improper wiring of the plaintiffs' premises or other causes for which the defendant was not responsible could have caused the low voltage. From a technical standpoint their evidence is quite persuasive. But often physical facts speak louder than opinion testimony of experts. The jury is not compelled to accept the opinion evidence that there was no negligence and that low voltage of current could not have been the cause of the fire for over against it is the plaintiffs' evidence of facts and circumstances which afforded reasonable contrary conclusions. Louisville & N. R. Co. v. Rowland's Admr., 227 Ky. 841, 14 S.W.2d 174. Other than that there were bottled gas heaters in the store which were used to supplement furnace heat, and they exploded a few minutes after the fire was discovered, there is no evidence from which an inference, much less a conclusion, could be drawn that the fire was otherwise caused.

■ Our conclusion is that the plaintiffs' evidence afforded much more than speculative inference of cause and effect and the case was properly submitted to the jury.

■ The complaint is made that it was error to sustain the plaintiffs' objection to a deposition of the Secretary of the Public Service Commission filing the company's tariffs which prescribed terms and conditions of service, including a paragraph exonerating it from or limiting its liability for damages caused by interruption of service. It appears the ground of objection was inadequate notice. Whether the ruling was proper or not on that ground, or on the ground of legal immateriality, we need not determine for it is apparent that there was no prejudice in the ruling of the court.

■ The court gave all the instructions offered by the defendant. They liberally set forth all the defendant's rights but scarcely any of the plaintiffs' rights. So the court gave an instruction offered by the plaintiffs which set forth the defendant's liability if it had violated the duties required of it as defined in the first instruction "by its gross carelessness and negligence in supplying an unusual, inadequate and dangerous current of electricity into plaintiffs' storehouse and into their electric motors used therein, and that by reason thereof, and as a proximate result thereof," the buildings caught fire and the property was destroyed. The instruction was the only one containing the right of the plaintiffs to recover any damage at all and defining the measure thereof. We cannot agree with the appellant that there was any inconsistency between this instruction and the others. Nor can it be

reasonably said that the instruction amounted to a peremptory for the plaintiff. It was framed in the usual conditional form. Without the instruction the jury could not have found for the plaintiffs.

The judgment is affirmed.