**KENTUCKY UTILITIES COMPANY,**
Appellant,

v.

**Lee TERRY, d/b/a Laurel Stoker Coal
Company, et al., Appellees.**

Court of Appeals of Kentucky.

June 18, 1965.

Robert M. Odear, Stoll, Keenon & Park, Lexington, William A. Hamm, Hamm, Taylor & Milby, London, for appellant.

J. Milton Luker, Luker & Luker, London, for appellees.

CULLEN, Commissioner.

The appellees, operators of a coal tipple which was destroyed by fire on the night of August 6, 1962, recovered judgment in the amount of $25,000 against the appellant, Kentucky Utilities Company, on a jury verdict finding that K.U.'s negligence caused the fire loss. The appellees had advanced two alternative theories of liability. One was that K.U. had negligently maintained in a defective condition the transformer and wires by which it supplied electric power to the tipple, as a result of which the fire was caused; the other was that, regardless of what caused the fire, there was negligent delay by K.U. in causing the electric current to be cut off, were it not for which the firemen could and would have put out the fire with little damage.

Appealing from the judgment, K.U. maintains that the evidence was not sufficient to create a jury issue on either theory of liability, and therefore the trial court erred in not sustaining K.U.'s motion for a directed verdict and its subsequent motion for judgment n. o. v. We agree.

From a transformer on a pole in K.U's 4160-volt line across a main highway from the appellees' tipple, service lines ran to a pole on the tipple premises on which there was metering equipment. From that pole, wires ran to a switch box on the tipple. The testimony for the appellees was that the fire started at the top of the tipple above the wires running from the meter pole to the switch box. (There was evidence for the appellant strongly indicating that in its early stages the main force of the fire was some distance away from the wires, at the other end of the tipple.)

The testimony for the appellees endeavored to show two different specific defects in K.U.'s equipment. The night watchman at the tipple testified that when the fire was first discovered he saw "the short ends" of some wires "connecting together" near the tipple. However, there was no evidence from any source that there was anything observably wrong with those wires before the fire.

The other defect was claimed to be in the transformer. There was testimony that

several months before the tipple fire there had been a coal yard fire near the area of the transformer pole, which had given out great heat; that at the time of that fire oil had been seen to drip from the transformer; and thereafter the electric current to the tipple had been weak, of which fact K.U. had been notified several times. The problem here is that there was no testimony that a weak current, or the previous heating and loss of oil from the transformer, could cause the transformer or the wires to catch on fire. In fact, the only testimony on the question was to the contrary.

As pointed out in Kentucky Power Company v. Halcomb, Ky., 373 S.W.2d 725, there has been, in those cases in which liability of the power company for fire damage to a customer's property has been upheld, a showing of an observed potentially dangerous condition existing before the fire, and a showing of notice to the company of that condition. For example, in Kentucky Utilities Co. v. White Star Coal Co., 244 Ky. 759, 52 S.W.2d 705, there was evidence of a defective condition of a transformer, known to the power company, which was shown to be capable of causing a fire; in Kentucky & West Virginia Power Company v. Elliott, 310 Ky. 496, 220 S.W.2d 964, there was evidence of uninsulated wires touching a house, the condition having existed for such period of time as to charge the power company with notice of it; in Kentucky Utilities Company v. Young, Ky., 247 S.W.2d 978; there was evidence of a defect in a meter, known to the company, which could have caused the meter to heat up and set fire to the wall to which it was attached; and in Kentucky Power Company v. Kilbourn, Ky., 307 S.W.2d 9, there was evidence of low voltage, persisting over a long period of time which caused motors to catch on fire from overheating.

■ In the instant case there is no evidence that the claimed defective condition of the transformer could have caused it or the wires to catch on fire or to emit fire. The fact that fire was seen along the wires

and around the transformer is not proof that the fire originated from a defect in the transformer rather than from a short circuit at the tipple. There is no basis for inferring that the fire started at one point rather than the other. Particularly is this true because the appellees' own evidence was designed to show defects both in the wires at the tipple and in the transformer.

■ The claimed "connecting together" of the wires near the tipple is not a defect chargeable to K.U. because there is no evidence that K.U. knew or should have known of the defect.

Since the fire seen running or dancing along the wires and around the transformer reasonably could have been attributable to the short circuit or "connecting together" of wires near the tipple, there is no basis for an inference that such running or dancing fire was caused by some other defect in the electric system. That would not be an inference, but mere speculation.

■ The evidence for the appellees showed no defect in the electrical system that could have caused the fire in the tipple, other than the "connecting together" of the wires near the tipple. There was no evidence that K.U. knew or should have known of that defect. Accordingly, it is our opinion that there was insufficient evidence to warrant a finding that negligence on the part of K.U. caused the fire in the tipple.

■ The alternative claim of the appellees was that there was negligent delay by K.U. in causing the electric current to be cut off after the K.U. employes had been summoned to the scene of the fire, as a result of which delay the firemen were prevented from effectively stopping the fire.

There was testimony by the appellees that when the K.U. employes arrived at the scene the fire was at an easily controllable stage and could have been put out with little damage had the current been cut off promptly so as to eliminate danger to the firemen from the electricity; however, the

K.U. men did not have the right tools with them with the result that there was a long delay before the power was cut off, during which time the fire advanced beyond control.

We believe this testimony cannot be given any probative value because the firemen themselves, who arrived shortly before or simultaneously with the K.U. men, testified that when they arrived the fire already was beyond control and they could not have stopped it. We think the other witnesses' estimates and evaluations of what the firemen could and would have done can be accorded no weight in the face of the firemen's positive statements that they would not and could not have done it.

We conclude that the appellees did not produce sufficient evidence to support a finding against K.U. on appellees' alternate claim.

The judgment is reversed with directions to enter judgment for the appellant in accordance with its motion for judgment n. o. v.