**KENTUCKY POWER COMPANY,**
Appellant,

v.

**Cassie P. ALLEN, Appellee.**

Court of Appeals of Kentucky.

March 28, 1969.

J. K. Wells, Paintsville, for appellant.

Harris Howard, Howard, Francis & Howard, Prestonsburg, for appellee.

OSBORNE, Judge.

This is a negligence action against an electrical power company for damages caused by a fire. The jury returned a verdict for $10,000. We reverse.

It is insisted by appellant power company that it was entitled to a directed verdict because appellee failed to sustain the burden of proving negligence on its part or that the power system in any way was the cause of the fire that damaged appellee's property. The facts as shown by appellee's testimony support this contention.

Appellant maintained a power line along the right-of-way parallel with U. S. Highway 23. Appellee owned a home and small tract of land near where the fire started. The fire started around a light pole across and down the road from a meat business operated by Lloyd Blackburn. The pole around which the fire started, in addition to carrying the transmission lines, had mounted upon it a transformer which served Blackburn's business and about four houses. Atop the transformer was mounted a lightning arrestor, which was grounded at the base of the pole.

Joe Blackburn, Lloyd's father who operated a store next to the meat house, testified that the electrical appliances in his place of business consisted of a pop cooler, ice cream cabinet, television, radio, iron and coffee pot and that his son's house had about eight or ten motors with from one to three horsepower, a water heater, saws, grinders and other machinery normally found in such an establishment. On the day of the fire, he was in the meat house when the lights went out and he went outside the meat house door to check the motors to see if they had blown a fuse. When he got on the outside, he noticed smoke coming up from the ground around the utility pole across the road approximately 150 to 200 feet away. He then saw a fire around the base of the pole about the size of a #3 wash tub. He attempted to extinguish the fire but due to a high wind was unable to do so. He testified that he hooked up a hose and squirted water on the fire for some period of time. His testimony is self-contradictory as to the exact time. He says that the pump continued to provide water to fight the fire until the drop line from the utility pole to his business was burned through by the fire. He testified that prior to the fire (no definite period of time given) the lights would dim and brighten at the store and meat house.

Lloyd Blackburn operated the meat house. He testified that on the occasion of the fire the lights went off and he and his father and another man came outside the meat house; that they "stood there and talked a few minutes, maybe a minute or so, and then down the road you could see a puff of smoke going down the highway and that around the pole there and after the fire started up around the pole." He testified that prior to the fire for about a month the lights had been flickering on and off and that he had reported this to the man who read the meter.

Loretta Blackburn, Joe's wife, testified that she was in the office attached to the meat market at the time the fire started and that she heard a loud noise and thought a motor had blown up when almost momentarily her husband and his father ran from inside the meat house. She testified that the fire started on the ground

at the foot of the pole. After the fire, some of the Blackburns picked up charred pieces of the lightning arrestor off of the ground near the pole. In Kentucky Power Company v. Halcomb, Ky., 373 S.W.2d 725 (1963), we held that in order for a plaintiff to establish that a fire had an electrical origin the proof must show:

1. An observed potentially dangerous condition existing before the fire.

2. Notice to the defendant of such condition.

3. An identification of the source of the fire in the immediate area thereof.

4. Credible evidence of a short circuit in the line which would have been caused by the condition. (Or here, credible evidence of some defect which could have started the fire).

We are of the opinion that appellee's testimony does not meet this test. There is no testimony of an observed potentially dangerous condition. The testimony that there had been some flickering of the lights is easily understood in view of the large number of appliances operating off of this tranformer. Under the circumstances, we do not believe the flickering of the lights would in itself indicate a potentially dangerous condition. The notice which was given to the meter reader, if we interpret this to be notice to the power company, was not notice of a potentially dangerous condition but only notice that the lights had flickered. The evidence does identify the source of the fire in the immediate area of the electrical system, since the fire started at the base of the utility pole in the grass along the edge of the highway. But there is no evidence of a defect which could have started the fire. The cause of the fire could have been a carelessly dropped cigarette or one of many other things instead of the electrical system. We are unable to determine from the briefs exactly what appellee's theory is as to how the fire started. They proved that there was a lightning arrestor atop the pole and that it was broken after the fire and pieces were found on the ground. They proved that the lightning arrestor was grounded at the base of the pole, but they offer no evidence that the lightning arrestor could have started the fire.

In an attempt to prove this, they introduced Ernest Osborne as an expert witness who had experience wiring houses and servicing appliances. In his testimony he described the lightning arrestor and testified that its purpose was to protect the transformer from cutting out in case of lightning. He further testified that should a lightning arrestor explode it would cut off the power from the transformer. He was asked what could cause the flickering of the lights which had been testified to by the Blackburns and answered, "It is possible it could be a loose wire or a ground to cause your lights to flicker." He did not testify that a ruptured lightning arrestor could cause a fire at the base of the pole or that he ever knew of one so doing. He did not testify that there were any loose wires in this instance, in fact his testimony was that he did not check it. In our opinion the testimony totally fails to identify the source of the fire. There was no evidence of any defect in the line or equipment which could be the cause of the fire.

Appellee relies upon three cases. Kentucky Power Company v. Kilbourn, Ky., 307 S.W.2d 9 (1957); Kentucky & West Virginia Power Co. v. Elliott, 310 Ky. 496, 220 S.W.2d 964, and Kentucky Utilities Co. v. White Star Coal Co., 244 Ky. 759, 52 S.W. 2d 705 (1932). We have examined these cases and find they are all distinguishable from the case presently before us upon the facts. In each of these there was ample proof that the fire had an electrical source. We are of the opinion that the motion for a directed verdict at the conclusion of the plaintiff's testimony should have been sustained.

The judgment is reversed.

All concur except HILL, J., who was not sitting.