826 F.2d 1064
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clifford & Willa MULLINS, Plaintiffs-Appellees,
v.
MOBILE HOME ESTATES, INC., Defendant-Appellant.
 No. 86-6154
 United States Court of Appeals, Sixth Circuit.
 August 25, 1987.
 
 Before MILBURN and RYAN, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Mobile Home Estate, Inc. (the manufacturer) appeals a jury verdict in favor of plaintiffs, Clifford and Willa Mullins, awarding plaintiffs damages for the destruction by fire of their mobile home due to negligent installation of wiring by the manufacturer of the mobile home. Appellant's sole contention is that evidence that the manufacturer's negligence caused the fire was insufficient to support a verdict. We affirm.
 
 
 2
 Plaintiffs purchased a mobile home which had been manufactured by defendant. At plaintiff's request, the manufacturer supplemented the usual wiring of the mobile home by installing an additional circuit. This circuit supplied electricity to a ceiling light and a wall socket in the 'den' of the mobile home. Plaintiffs purchased the home through a retail outlet, Highland Mobile Home Sales, Inc., which also delivered it to plaintiffs' property. Clifford Mullins and a neighbor connected the home's outside power hookup to a utility pole.
 
 
 3
 Plaintiffs lived in the mobile home for approximately fourteen months. Throughout this period, they observed that the wall outlet and ceiling light in the den were defective. The ceiling light, or any appliance plugged into that wall socket, would go off and on unpredictably. Plaintiffs complained to both the manufacturer and the retailer about these problems, as well as about the electric furnace in the mobile home, and the retailer replaced the light fixture, but this repair did not eliminate the problem.
 
 
 4
 At approximately 3:00 a.m. on February 7, 1985, plaintiffs were sleeping alone in their mobile home. The evening before, they had had a fire in the fireplace, which was burned down and secured before they retired to bed. They awoke, smelled smoke, and got up separately. Each of them spotted flames on the den wall 'behind the refrigerator,' and saw smoke elsewhere inside the home. They immediately ran together out the back door, and watched their mobile home burn almost down to the ground.
 
 
 5
 Plaintiffs testified that they had seen flames 'behind the refrigerator' and that they could not tell if the ceiling light in the den was turned on or off because it could be on without the light turning on. A fire expert, Eaton, testified that he found 'burn pattern' evidence which eliminated the fireplace and furnace as possible points of origin of the fire and suggested the upper den wall as the point of origin. Eaton also opined that the cause of the fire was a loose connection rather than faulty wires, a short circuit, or an appliance.
 
 
 6
 Defendant responded with an expert of its own, Spaniol, who reviewed Eaton's report. The thrust of Spaniol's testimony was to stress the difficulty of pinpointing the cause of a fire without knowing exactly where it began. His most telling point was that, unless there was something plugged into the wall socket, or unless the ceiling light was turned on, it would be physically impossible, even assuming a loose connection in the wiring to those two points, for the loose connection to create a spark and start a fire.
 
 
 7
 A jury awarded plaintiffs $66,278, representing the value of the mobile home and personal property destroyed in the fire, and defendant appealed.
 
 
 8
 Appellants cite a single case in support of this appeal, Kentucky Power Co. v. Combs, 305 S.W.2d 105 (Ky. Ct. App. 1957), where the court held that the evidence of a power company's negligent causation of a fire was insufficient in the absence of evidence on where and how the fire began. Without this evidence, the court reasoned, a theory that an improperly insulated access cable caused the fire was mere speculation.
 
 
 9
 Plaintiffs respond with several cases wherein the Kentucky appellate courts have held that evidence on the negligent causation of electrical fires was not speculative if some not incredible testimony exists identifying the cause or point of origin of the fire. Kentucky Power Co. v. Halcomb, 373 S.W.2d 725 (Ky. Ct. App. 1963); Kentucky & West Virginia Power Co. v. Kilburn, 201 S.W.2d 896 (Ky. Ct. App. 1947; Kentucky Utilities Co. v. White Star Coal Co., 52 S.W.2d 705 (Ky. Ct. App. 1932)
 
 
 10
 More recently, the Kentucky Court of Appeals has stated:
 
 
 11
 'We have authorized recovery for fires alleged to be of electrical origin where (1) there was an observed potentially dangerous condition existing before the fire, (2) notice of such condition was given to defendant, (3) the fire originated in the immediate area thereof, and (4) there was credible evidence of some defect which started the fire. Kentucky Power Co. v. Halcomb, Ky., 373 S.W.2d 725 (1963), and Kentucky Power Co. v. Allen, Ky., 444 S.W.2d 81 (1969).'
 
 
 12
 King v. South Kentucky Rural Electric Co-operative Corp., 500 S.W.2d 793, 794 (Ky. Ct. App. 1973). Similarly, in Savill v. Hodges, 460 S.W.2d 828 (Ky. Ct. App. 1970), a jury verdict for plaintiff was reversed, and entry of judgment in favor of defendant ordered, when plaintiff proved that the wiring in her apartment was known to the landlord to be defective before the fire, but there was no additional evidence tending to establish that defective wiring caused the fire. On the contrary, there was evidence that the fire was not electrical in origin and that the fire started in the bed of an adult occupant of the apartment. This latter evidence was in the form of interpretation of burn patterns.
 
 
 13
 This case, unlike Combs, King, and Saville, involves expert evidence identifying faulty wiring in a particular area as to the cause of the fire. The defendant's expert, who sought to cast doubt upon this conclusion, did not view the site of the fire.
 
 
 14
 Furthermore, it is clear that defective wiring, a 'potentially dangerous condition,' had been observed before the fire, and defendant had been notified of this condition. The burn pattern evidence relied upon by Eaton, as well as the eyewitness accounts of plaintiffs, concurred in suggesting the den wall as the origin of the blaze.
 
 
 15
 The only missing evidence is physical evidence of a loose connection in the wiring. In the devastated remains of plaintiffs' mobile home, Eaton found no such clear proof correlating the known defect with the fire. On the contrary, he relied in part upon the complete destruction of the copper wiring in the den area to identify that area as the hottest part of the fire, and thus, inferentially, its point of origin. Even in the absence of the direct evidence, however, the wiring defect could be inferred from the performance of the two power outlets linked to the optional circuit that was installed by defendant in the very area where, competent evidence suggests, the fire began.
 
 
 16
 The manufacturer has neither undermined the plausibility of plaintiffs' theory nor posited a plausible alternative. The point much relied upon, that there was no load on the suspect wiring at the time of the fire, is just guesswork. Apparently nothing was plugged into the wall socket at the time, because plaintiffs had long recognized the unreliability of that outlet and stopped using it. However, the ceiling light switch may have been turned on, without the lamp lighting, because it has been shutting off on its own all along.
 
 
 17
 The manufacturer's theory that the retailer's serviceman may have caused the fire when he replaced the ceiling fixture is also highly speculative, especially in view of the fact that the defect existed prior to this service call, and was the reason the serviceman was called.
 
 
 18
 AFFIRMED.